[No. 6024. Decided March 20, 1906.]

THOMAS FROMAN, *Respondent*, v. H. E. AYARS *et al.*,
*Appellants*.[1]

MALPRACTICE—EVIDENCE OF NEGLECT OF PHYSICIAN—SUFFICIENCY.
A verdict in favor of the plaintiff, in an action for malpractice, will
not be disturbed on appeal as unsupported by the evidence, where
there was much conflict in the testimony as to the correctness of
the remedies and methods in attempting to set a compound fracture
of the leg, and where it appeared that the wound did not heal, but
was, in a short time, in very bad condition, necessitating amputa-
tion of the foot.

DAMAGES—EXCESSIVE VERDICT. A verdict for $5,000 damages for
the loss of a foot, sustained through the malpractice of a physician,
is not excessive, where it appears that the plaintiff, a common
laborer, was forty-four years of age, with an expectancy of life of
twenty-six years; and such a case is not to be distinguished from
the ordinary personal injury case in assessing the amount of the
damages.

Appeal from a judgment of the superior court for Lincoln
county, Warren, J., entered June 2, 1905, upon the verdict
of a jury for $5,000 damages for malpractice. Affirmed.

*Graves & Graves,* and *Wright & Wright,* for appellants.

*Merritt & Merritt,* for respondent.

HADLEY, J.—This is an action to recover damages for al-
leged malpractice of the defendant H. E. Ayars, as a phy-
sician and surgeon. His wife, as a member of the marriage
community, is also made a defendant. It is alleged that the
plaintiff, while driving on July 7, 1904, was thrown from a
vehicle; that he sustained a compound fracture of the bones
of his left leg, about two inches above the ankle joint; that
the ends of the bones protruded through the flesh and skin;
that within a few hours of the accident the defendant, at
plaintiff's request, commenced to treat the broken leg and

1Reported in 85 Pac. 14.

wound as a physician and surgeon, for hire; that in setting the bones, the defendant did not properly cleanse and prepare the wound made by the protrusion of the bones, but left foreign substances in and about the wound which should have been removed; that he caused the leg to be placed in a wooden box and fastened to the sides thereof by means of cord or bandages; that he placed a cord bandage around plaintiff's left foot, just back of the toes, and drew the cord down over the end of the box, where it was securely fastened, and that this caused the foot to be extended into an unnatural position making the heel to rest heavily upon the bottom of the box; that soon after plaintiff suffered much pain; that the heel became sore and was injured, and that the leg was left in that condition from the seventh until the tenth of July, when it was taken from the box and placed in a plaster of Paris cast; that it remained in the plaster of Paris cast until July 17, when it was removed therefrom and again placed in the box and securely bandaged and fastened; that by means of adhesive plaster or cords attached to the left foot, just back of the toes and extending downward over the iron rods of the bed, defendant caused a weight of about eighteen pounds to be suspended; that the bandages and weight were so adjusted that the foot was drawn to an unnatural and improper position, the toes being drawn and extended far beyond the natural position, and the heel being drawn and held too solidly against the bottom of the box; that the leg remained in that position until July 18, with the weight so suspended, during which time plaintiff suffered great agony and pain, both with the wound of the leg and by reason of the condition in which the heel was held against the bottom of the box; that by reason of defendant's failure to properly cleanse and prepare the wound, the same within a few days after the injury became inflamed, pus formed therein, and the flesh in and around the wound began to decay; that for the same reason the ends of the bones became deadened and began to decay, and that this condition had so progressed that, on the

18th of July, the ends of the bones both above and below the fracture extended to the distance of about one-half inch, and the flesh had so decayed that it was practically in an incurable condition; that at the time the leg was placed in the box and the weight attached thereto, the defendant packed bran around the leg in such a manner that the bran was permitted to accumulate in and about the wound; that by reason of defendant's failure to exercise reasonable care and diligence in the treatment of said wound and fracture, and by reason of his failure to exercise his skill and to apply his learning to accomplish the proper treatment, the aforesaid condition was produced, and that the same made necessary the amputation of the leg, which was effected on July 20, 1904, at the Sacred Heart Hospital in Spokane, by Doctors Setters and Thomas. Issue was joined, and the cause was tried before a jury, resulting in a verdict for the plaintiff. Judgment was entered upon the verdict, and the defendant, having been denied a new trial, has appealed.

The first error assigned is that there was not sufficient evidence to warrant any verdict and judgment against appellant. As is usual in such cases, there was much conflict in the testimony of the physicians and surgeons who were examined as expert witnesses. Differing views were expressed as to the propriety of using the "fracture box" and suspended weight in such a case. There was general concurrence of view as to the necessity of applying antiseptic remedies and methods in the treatment of the wound from the beginning. But the testimony was not in accord as to the correctness of the remedies and methods applied in this case. There was testimony in support of the more material allegations of the complaint. While it should not be said that all the averments hereinbefore set forth were sustained by testimony, yet the more material ones were. We think, without doubt, from the evidence, that at the time respondent was removed to the hospital at Spokane, the condition of the wound and bones was

very serious. Witnesses testified that the appellant said, even at that time, that the patient was doing well. Dr. Setters, however, testified that, when the respondent came under his treatment at the hospital, he found the wound very septic, and that it was filled with pus and bran; that the limb was in a fracture box filled with bran, and that there was a cloth across the opening of the wound about four by six inches in dimensions; that the end of the tibia was protruding through the wound, the flesh of the wound being dead, covered with a necrotic membrane, and very foul; that amputation was then necessary, and that the same was accomplished. Whether such a result was due to the treatment administered by appellant and to his neglect to apply his learning and skill in the premises was, under the evidence, for the jury. In view of the character of the evidence that was before the jury, it is neither for the trial court nor for this court to weigh it and say that it does not support a verdict for the respondent.

It is next urged that the amount of the verdict is excessive, and that it is manifest that the jurors were swayed by passion or prejudice. The amount is $5,000. Appellant's counsel make an interesting argument to the effect that this case should be distinguished from one which is brought to recover for ordinary personal injuries where the injury is wholly due to the neglect of the defendant in the case. It is argued that in the case at bar the primary cause of the result which came to respondent was the running away of the team, for which appellant was in no way responsible, and that the degree of appellant's responsible relation to the final outcome cannot be as great as that of one whose negligence laid the first foundation for the injury. The theory of the case, however, is that the final outcome to respondent, by which he was deprived of a foot for the remainder of his life, would not have resulted if appellant had properly applied his learning and skill. It is true, respondent would have suffered pain and distress from the original injury, yet if the bones had properly united and the wound had healed, the suffering

would have been but temporary, while as it is he must continue to suffer humiliation, inconvenience and loss of earning power during the remainder of his life. If such a result would not have occurred but for appellant's neglect, we are not impressed that there is force in the logic of counsel's argument. Appellant held himself out as sufficiently skilled and learned to reasonably and properly treat respondent's injury, and having undertaken to do so for a compensation, the duty was placed upon him to bring to bear upon such treatment the reasonable and ordinary skill and care recognized by the members of his profession in general, as proper and necessary in such a case. He was neither required to exercise the highest degree of skill nor the highest degree of care, but only such as are recognized as ordinary and reasonable by the standards of his profession. The issue was made before the jury that he did not do this, and that his failure in that regard was the responsible cause of the final and serious result to respondent. Respondent was forty-four years of age at the time of the trial, and it was admitted that his life expectancy at the time of his injury was twenty-six years. He had no settled occupation, but had before been variously employed at farming, in the livery business, and as a driver of teams. The value of his earning power should probably be viewed from the standpoint of a common laborer; but viewed from that standpoint, we think we should not undertake to say that the verdict was excessive. To pass through twenty-six years of life without a foot is a condition that we may assume no man, however humble his occupation, would be willing to accept for $5,000. There is seldom a case of this kind, or even one for ordinary personal injuries, when there does not seem to be some element of hardship either way the case may be decided; but such cases are triable by a jury, and when so tried, if there is reasonable evidence to support the verdict, it should not be reduced unless it is manifestly too large, when all the facts and cir-

cumstances are considered. We cannot say that such is true of this one.

No errors are assigned upon the introduction of evidence, the instructions of the court, or other matters occurring at the trial. The judgment is therefore affirmed.

Mount, C. J., Fullerton, Crow, and Dunbar, JJ., concur.