[No. 12357. Department One. January 11, 1915.]

## Clara E. Cranford, *Respondent*, v. John H. O'Shea, *Appellant*.[1]

Appeal—Review—Harmless Error—Admission of Evidence. The admission of evidence in a malpractice case that defendant was negligent in not having X-ray photographs taken of the injury is harmless, where there is independent evidence tending to show negligence and the testimony would probably go only to the quantum of damages, affirmance of which was conditioned on remission of a part.

Same—Failure to Instruct. Failure to instruct as requested that defendant in a malpractice case knew of the fracture of the femur, but could not heal it because of the synovitis of the knee joint and the condition of the fracture below the knee, was not prejudicial, where the case went to the jury after a long trial in which every feature of plaintiff's case as well as the defense was prominently and skillfully brought out.

Evidence—Judicial Notice—Physical Suffering. Courts will judicially notice that a compound comminuted fracture of the lower limb and a fracture of the femur are painful injuries, occasioning long suffering, although treated with the best of surgical skill.

Physicians and Surgeons—Malpractice—Liability. A physician called to treat a person is liable only for the suffering caused by his own negligent acts, and not for that caused by the original injury.

Physicians and Surgeons — Malpractice — Excessive Damages. A verdict for $7,385 for malpractice is excessive and should be re-

[1]Reported in 145 Pac. 579.

duced to $5,385, where, in treating a fracture of the lower limb, the surgeon omitted to treat a fracture of the femur, which knit in such a way as to require breaking and cutting the two ends by another surgeon in order to accomplish a good recovery.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 23, 1914, upon the verdict of a jury rendered in favor of the plaintiff for $7,385, in an action for malpractice. Reversed unless $2,000 is remitted.

*Lloyd E. Gandy* and *Graves, Kizer & Graves*, for appellant.

*Attwood A. Kirby* and *H. M. Stephens*, for respondent.

CHADWICK, J.—Appellant is a surgeon, engaged in the practice of his profession. He is sued for malpractice. On January 17, 1910, respondent was injured in a coasting accident. Both bones of one of her lower limbs were fractured just above the ankle. The fracture is denominated by the medical witnesses a compound comminuted fracture. The flesh was torn and the bone protruded. There was also a simple fracture or a nearly square break of the femur a short distance above the kneejoint. Appellant was, at the time of the accident, surgeon at the emergency hospital, and gave respondent first aid and thereafter treated her for four or five weeks, when she was passed to the care of the county physician, who cared for her until Dr. Phy, a surgeon of her own choosing, took charge of the case.

So far as we can see, the fracture of the two bones in the lower limb was treated surgically, and but for an infection that appeared two or three days after the accident and for which appellant is not shown to be responsible, respondent would have recovered of that fracture in from six to twelve weeks. The malpractice is alleged to lie in the fact that appellant did not make timely discovery of the fracture of the femur and did not, after discovery, render proper and skilled service. On February 2 or 3, X-ray photographs were taken.

Thereafter respondent's limb was set and put in a cast. It so continued until after the case passed to the charge of the succeeding doctors. After several months, Dr. Phy had X-ray pictures made, and it was found that the fractured femur had slipped out of place and, being held by the contracted muscles, had knit or formed a union. This union was broken up by Dr. Phy, who cut the two ends, slightly shortening the length of the two pieces, which he held in place by plates riveted into the bone. The limb is now straight instead of bowed out as it had been and, but for the shortening and a slight probability of future trouble, is what is called a good recovery. Appellant insists, that he knew of the fracture of the femur; that he discovered it at the time he first examined the patient; that he could not have failed to see it as it was "laid out before him." In this he is corroborated by the assisting surgeon and by the surgical nurse who was present. But the jury believed the respondent and her mother, who testified that appellant did not examine or give any attention to the upper fracture, although respondent continuously complained of the pain and suffering she endured at the place of the fracture.

Appellant's version is, that the lower fracture was the important thing; that the knee became immediately swollen, and that a synovitis of the knee joint developed; that because of the swelling and synovitis, he could not set the bone at the time by ordinary methods, nor could he attach a weight to the limb to hold the fractured bones in place because of the fracture and lacerations below the knee. Respondent's present condition is: the upper fracture has made a good recovery; the lower fracture, after an operation in which the bones were cut and reunited, has healed; the limb is shorter than the other from one and one-half to two and one-half inches as variously estimated by the witnesses; she walks with, and bears most of her weight on, a cane which she carries at her hip; she can walk without help, though she can walk better with assistance; she was bedridden for many

months, and has suffered, and still suffers, acute pain; her knee is slightly larger than its companion and she cannot bend her ankle up, although she can bend it down, so that when going upstairs she has to carry the injured limb after the other. Respondent asks for damages for pain and suffering. It is not shown that she lost any earning time or wages on account of the injury. The case was here on defendant's appeal, *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486, and was reversed and remanded for a new trial, with the same result except that the jury substituted the sum of $7,385 for the $5,000 allowed on the former trial.

It is urged that the court erred in allowing evidence to be received tending to show that appellant was negligent in that he did not have X-ray pictures taken at the time or shortly after the case came under his notice; that the court did not properly instruct upon this feature of the case; and that the court erred in submitting the issues to the jury, in that he failed to state appellant's contention that he knew of the fractured femur but could not heal it because of the synovitis of the kneejoint and the condition of the lower fracture. As for the first contention, we think it would have been better if the court had sustained appellant's objections and had given his requested instructions, but as there is independent evidence of negligence and the testimony would in all human probability go only to the quantum of damages, we have decided, in view of the conclusion we have reached, to treat the act and refusal of the court as not sufficiently prejudicial to justify a third trial of the case. As for the last contention, the case went to the jury after a long trial. Every feature of respondent's case as well as the defense was prominently and skillfully brought out. We cannot believe the jury were unmindful of, or failed to consider, appellant's case. In this respect we find no error.

This brings us to the real contention. Are the damages awarded excessive? It is fundamental that a doctor who is called to treat an injured person cannot be held to answer

for the suffering caused by the original injury, but only for the suffering caused by his own negligent acts. *Taylor v. Kidd*, 72 Wash. 18, 129 Pac. 406; *Rice v. Puget Sound Traction, Light & Power Co.*, 80 Wash. 47, 141 Pac. 191. The theory being evident, the original injury, in so far as the attending surgeon is concerned, is regarded as if it were self-inflicted. All hurts requiring surgical care are presumptively painful and tormenting. It can be judicially noticed that a compound fracture of the lower limb and a fracture of the femur are painful hurts, and will occasion long suffering although treated with the best of surgical skill. In the instant case, appellant is not responsible for the original injury, or the infection which prolonged the healing of the lower fracture indefinitely and which made a surgical operation upon it necessary, or for the six to twelve weeks of confinement during which the bones might have knit under the most skillful treatment had there been no infection. In fact, the negligence of which the jury found appellant guilty cannot be made to extend beyond his treatment, or as it is found, his lack of treatment, of the fractured femur which, barring the slight shortening of the limb made necessary to square the bones, is a fair recovery, and the added pain and suffering. Considering recoveries in cases where the injuries were of like nature and for which the party charged was solely responsible, we are constrained to believe that the jury, in pity for the respondent, visited the whole consequence of her hurts and suffering upon the appellant, without appreciating the demand of the law that respondent bear her share of the misfortune which angry chance threw over the unlucky parties to this action. *Mueller v. Washington Water Power Co.*, 56 Wash. 556, 106 Pac. 476, is, in so far as the consequences of the injury are concerned—an injury for which defendant was responsible—most like this case. We there allowed a recovery of $5,000. It has seemed to us that a recovery of more than $5,385 is not justified by the record in this case.

A motion for a new trial was taken under advisement by

the trial judge, after saying, "To tell you the truth, Mr. Stephens, the girl is fortunate to be alive with any kind of a leg." After reading the case of *Froman v. Ayars*, 42 Wash. 385, 85 Pac. 14, in connection with the *Mueller* case, the court allowed the verdict to stand. The opinion in the *Froman* case admits that a verdict "manifestly too large" should be reduced. The surgeon was there charged, and the jury found, that but for the malpractice, the plaintiff would not have lost his foot by amputation. A life expectancy and the earning power of a common laborer were proved. The holding of this court was rested on that circumstance. "To pass through twenty-six years of life without a foot is a condition that we may assume no man, however humble his occupation, would be willing to accept for $5,000," said the court.

We have not overlooked the contention that, when the trial judge has refused to reduce the verdict we will not, and the cases cited to sustain it. In the cases relied on, the party charged was primarily responsible, the testimony conflicting, and we could not say, nor would we say if this case were against one responsible for the original hurt, that the verdict is too large; but bearing as she must her own share of the attendant and consequent suffering, we think respondent, who can claim no more than compensation, should remit $2,000 of her recovery or take a new trial. It is our judgment that the jury was moved by the passion of sympathy for respondent and possibly by the passion of prejudice against appellant.

If the respondent will, within thirty days after the remittitur in this case goes down, remit $2,000 of her judgment and consent to the entry of a judgment for $5,385, the judgment will be affirmed. Otherwise a new trial will be awarded.

CROW, C. J., PARKER, GOSE, and MORRIS, JJ., concur.