[No. 21096.   Department Two.   October 3, 1928.]

PETER F. GRIFFIS, *Respondent,* v. EDWIN J. BROWN, *Appellant.*[1]

*J. Speed Smith, Henry Elliott, Jr.,* and *Edwin James Brown,* for appellant.

*Longfellow & Fitzpatrick,* for respondent.

BEALS, J.—The defendant (appellant here) conducts a dental establishment, in the city of Seattle, and on May 20, 1926, plaintiff called at defendant's office for the purpose of receiving some needed dental attention. A dentist in the employ of defendant proceeded to extract plaintiff's second right lower molar, using an hypodermic needle loaded with some appropriate drug to render the extraction as painless as possible.   The extraction proved difficult, the tooth breaking, which

[1]Reported in 270 Pac. 819.

necessitated the extraction of the roots separately. In October, 1925, plaintiff's lower right first molar had been extracted, the dentist (not an employee of defendant) placing an hypodermic injection near the tooth to deaden the pain.

In September, 1926, plaintiff was quite sick, having a high fever, headaches and severe pains in his head and back, culminating in a severe attack of jaundice. In March, 1927, he was again ill, suffering from headaches, the cause of which could not be determined.

In April, 1927, plaintiff consulted another dentist who instructed plaintiff to have an X-ray taken of the right hand portion of his lower jaw. When this was done, the X-ray disclosed the presence of a small piece of hypodermic needle in plaintiff's gum near the place whence the first and second molars had been extracted. On April 14, Dr. Dean removed this fragment of needle, after which operation plaintiff alleges that his health improved and that he no longer suffered from headaches or the pains with which he had previously been afflicted.

Plaintiff instituted this action to recover damages from defendant, alleging that defendant's employee had negligently broken off the point of an hypodermic needle in plaintiff's jaw and left the same there whereby plaintiff had been rendered sick and ill and caused great pain and suffering. The issues between plaintiff and defendant were tried to a jury, which returned a verdict in plaintiff's favor in the sum of twenty-five hundred dollars, upon which verdict judgment was entered; from this judgment defendant appeals.

At the close of respondent's case, appellant moved to take the case from the jury and for judgment in his favor; and at the close of the testimony, appellant moved the court for a directed verdict in his favor,

both of which motions were denied, which rulings are assigned as error.

In regard to this alleged error, we are of the opinion that there was sufficient testimony to go to the jury upon the question of appellant's responsibility for the presence of the fragment of hypodermic needle in respondent's gum, and that a jury should pass upon the question of appellant's responsibility for pain and suffering endured by respondent because of the presence of this fragment of needle in his gum, or by the removal thereof.

Appellant seasonably moved the court to take from the jury all question of appellant's liability to respondent, except for pain suffered by respondent in the removal of the needle point from his gum and for any suffering endured by him until the incision made in his gum for the purpose of removing the needle point healed. After the rendition of the verdict, appellant moved for judgment in his favor notwithstanding the verdict, or, in the alternative, for a new trial. All of these motions were by the trial court denied, and these rulings are assigned as error by appellant.

As above stated, respondent fell ill during the month of September, 1926, and called a physician who treated him continuously for over a week from September 11, during which period respondent suffered from a high fever, severe headaches, nausea and vomiting. About September 15, respondent developed jaundice, indicating, as his physician stated on the witness stand, that respondent was suffering from an infection of his liver or gall bladder. Respondent recovered from this illness and did not again consult his physician until March 7, 1927, when the doctor was called in to treat respondent for a severe headache and a slight rigidity of the muscles of the neck. This

illness responded to treatment and respondent regained approximately his normal condition.

In response to a question by respondent's counsel as to whether or not respondent's illnesses could have been caused by the presence of the broken needle point in his gum, respondent's physician answered:

"It is possible that it could, yes, providing the needle was infected. If the needle was sterile and no abscess formed, then the condition, his diseases could not have been caused,  .  .  ."

at which point the witness was interrupted by counsel who propounded another question to him. Later on the witness again answered the question:

"If the needle were not infected, it is possible that he could have had some pain, but perhaps not the long suffering he had. He could have had some tenderness and some shooting pains in the side of his head, but I am sure he could not have had the general infection that he had. Q. Would a rusted needle be an infected needle? A. Not necessarily. Q. Might it be an infected needle? A. A rusted needle could or could not be an infected needle. It just depends on whether it was or not. Infection means the presence of bacteria, and the presence of bacteria would mean that the needle was infected and would have nothing to do, I believe, of whether it was rusted or not."

This witness testified that in September he gave respondent a careful physical examination in an endeavor to ascertain the cause of his sickness; that he called in consultation another physician who, with him, examined respondent, and that he advised respondent to have his teeth examined and X-rayed as soon as possible in order to determine whether or not any of them were diseased in such manner as to cause the illness from which respondent was suffering. This witness later testified that he did not know whether or not the needle point in respondent's jaw was infected,

or whether or not there was ever an abscess in respondent's jaw at the spot where the needle point was found.

Dr. Dean, who in April, 1927, removed the needle point from respondent's jaw, was called as a witness for respondent and testified, on his examination in chief, referring to his removal of the needle point, as follows:

"Q. State whether or not there was any foreign substance around the needle? A. None as I detected. Q. Do you know whether or not the needle was infected? A. No, I do not."

Later, on cross-examination, the witness testified:

"Q. Doctor, when you took the needle out you saw no evidence of infection? A. None. Q. There was no pus there? A. No free pus. Q. No free pus? And no abscess? A. No."

Respondent himself testified that, when the needle point was removed from his gum, it

". . . was imbedded in kind of mattery-looking stuff, just like—Oh, broken off—I would consider it like lard—just mattery-looking stuff. He [Dr. Dean] put it in his fingers and scraped it off, . . ."

It clearly appears from all the testimony in the case that respondent's sicknesses in September, 1926, and March, 1927, could not have been caused by the presence of the needle point in his gum unless the needle point were infected. The question to be determind is, was there sufficient evidence in the case to support a finding of the jury to the effect that respondent's sicknesses, pains and suffering were the result of the presence of the needle point in his gum.

Respondent relies upon the case of *Helland v. Bridenstine*, 55 Wash. 470, 104 Pac. 626, in which this court upheld the verdict of a jury rendered in favor of the plaintiff in an action brought against a phy-

sician based upon his alleged negligence in using infected instruments in an examination of plaintiff's person. It is evident from a reading of the opinion in this case that plaintiff's theory was supported by creditable evidence which, if believed by the jury, showed "a chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable." That case is not authority for holding that, in the case at bar, the jury would be permitted to guess that the needle point in plaintiff's gum was infected. The only testimony in the case, from which it could be inferred that there was any infection on or about this needle point, is that of respondent himself who testified, as above quoted, that, when the point was removed from his gum, it was covered with a mattery substance like lard. We do not, however, find any testimony which supports respondent's contention that he suffered from any infection resulting from the presence of the portion of the needle in his gum.

In the case of *Coombs v. James,* 82 Wash. 403, 144 Pac. 536, this court, in reversing a judgment entered upon the verdict of a jury in favor of the plaintiffs in an action against a physician for malpractice, relied upon the opinion of Mr. Justice Taft, in the case of *Ewing v. Goode,* 78 Fed. 442, and quoted the following from the opinion in that case:

"When the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury. When plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither."

While the facts in the case of *Coombs v. James* differ from the facts in the case at bar, still the reasoning of the court supports our conclusion in this case to the effect that no evidence was introduced from which the jury could reasonably conclude that the needle point taken from respondent's jaw by Dr. Dean had been infected. The jury may have guessed that such was the case, but we find no evidence in the case which can, in law, support such a finding. As it clearly appears that, unless the needle point were infected, it could not have produced respondent's attack of jaundice and the other ailments from which he suffered, outside, possibly, of shooting pains in his jaw, it follows that the rulings of the trial court, above referred to, were erroneous.

We conclude that the court erred in denying appellant's motion to limit the jury in considering the case to damages suffered by plaintiff on account of the presence of the needle point in his gum, there being testimony that the presence of the needle point might have caused shooting pains in plaintiff's jaw, and to damages suffered by respondent by reason of pain and suffering occasioned by the removal of the needle point and the healing of the incision necessarily made in removing the same. The jury not having been so limited in considering the case, the court erred in denying appellant's motion for a new trial.

The judgment appealed from is reversed, with instructions to the superior court to grant appellant's motion for a new trial and proceed in accordance with this opinion.

FULLERTON, C. J., ASKREN, HOLCOMB, and MAIN, JJ., concur.