[No. 21565. Department Two. June 6, 1929.]

MAURICE P. McCORMICK, *Appellant,* v. E. O. JONES, *Respondent.*[1]

*Arthur M. Harris* and *George F. Hannan,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

[1] Reported in 278 Pac. 181.

FRENCH, J.—In the latter part of July, 1924, appellant, at that time an employee in the United States navy yard at Bremerton, was injured in an accident, and sustained a broken back. The injury consisted of a fracture of a portion of the fifth lumbar vertebra. He was treated for his injuries for some time at the Puget sound navy yard, by reason of the fact that he had been injured while an employee of the United States in a civil service department. Thereafter he was discharged from the navy yard hospital, and finally, under the direction of the United States employees' compensation commission, of Washington, D. C., was sent to respondent for treatment. This was in September, 1925, fourteen months after his back had been broken, appellant having, in the meantime, been treated by other physicians, from time to time, attempting to secure relief. Respondent recommended a bone transplanting operation to immobilize the injured back. The operation was performed in the Swedish hospital on the morning of November 23, 1925. Dr. Jones, the respondent, was the chief operating surgeon, and was assisted by Dr. Buckner and by two nurses. The operation consisted in making the necessary incision, removing the portions of the bone that had been broken off, making a gutter in the spine, and putting in a bone graft, that is, putting in place and fastening, a long, narrow strip of bone that had been taken from the shin.

During the course of the operation, there was a sudden hemorrhage which was checked by pressing a hot pack into the wound and leaving it until the operation was completed. The operation being completed, the hemorrhage having ceased, the hot pack was removed, the wound closed and sewed up. Through some inadvertence, there was sewed up in the wound a sponge known to the medical profession as a "twelve." All

of the witnesses agreed that it was not necessary or proper, for the purpose of the operation, to leave this sponge in the wound. Thereafter this sponge was removed. There is a plain dispute in the testimony as to when, and under what circumstances, this took place, Dr. Jones testifying that he removed the sponge about eleven days after the operation, at the same time he drained the wound and supplied two Dakin tubes; the nurses claiming that this sponge was removed about six weeks later, at the time Dr. Jones removed a small piece of old bone graft. After the operation, there was an infection and, for some time, appellant suffered severely, going from doctor to doctor until he was finally forced to undergo another operation to remove a piece of infected bone, evidently a part of the bone which was broken off at the time of his original injury, and now seems to have completely recovered.

This action was instituted to recover from Dr. Jones, on the theory that the sponge referred to above had been negligently left in his back at the time of the original operation, that being more than a year after the date of his original injury, and that the leaving of the sponge in the wound at the time it was sewed up had been, to a considerable degree at least, responsible for the bad condition which existed thereafter.

The case was tried before the court with a jury, and from a verdict for the defendant, this appeal follows.

The jury, by its verdict, must have found, either, first, that there was no negligence, or, second, that there was no damage, or both.

On the question of negligence, we think little need be said. We think all of the witnesses who testified on the subject on both sides admitted that the leaving of the sponge in the wound was negligence. We also think that the court can say, as a matter of

law, that, when a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, that act constitutes negligence. A fair reading of the testimony of all of the medical experts called on this case leads to that conclusion.

We do not believe that the minds of reasonable men differ on this subject, and that a mere statement of the facts conclusively shows negligence, and that appellant, being the head surgeon in charge of this operation, is responsible therefor. If the jury, therefore, found for respondent on the ground of no negligence, the appellant is entitled to a new trial.

On the other ground, namely, that no damage accrued, appellant strenuously insists that the jury were not correctly instructed on the question of damages and the measure of damages. The court gave the following instruction:

"If your verdict is for the plaintiff, you will allow him such a sum as, in your opinion, will fairly and justly compensate him for the damages, if any, he has sustained as a proximate result of defendant's negligence, and in arriving at the amount of your verdict, you should take into consideration all of the facts and circumstances established by the evidence.

"In determining the amount, you cannot consider the original injuries he received, or any pain or suffering which he has endured or may endure in the future as a direct result of said injuries, or the pain and suffering incident to said original operation; nor can you consider loss of earning capacity, either past or future, if you find he has suffered any, resulting from the original injuries.

"*You can only allow damages for such pain and suffering, if any, and such loss of earning capacity, if any, that the evidence establishes is due solely to the negligent treatment by defendant.* If you should find that the plaintiff is disqualified from following his regular

occupation by reason of the negligence of the defendant, then you are entitled to consider the fact that at the present time he is twenty-six years old and has a life expectancy of 38.11 years.

*"You cannot allow damages that are remote, uncertain or speculative; you can only allow for such damages as the evidence shows with reasonable certainty have been sustained, or such as the evidence shows with reasonable certainty will be sustained in the future as a proximate result of defendant's negligence.*

*"A jury is not permitted to base its verdict on speculation or conjecture. If you are unable to determine what part, if any, of the pain and suffering and impairment of earning capacity which the plaintiff has suffered was caused by the negligence of the defendant, and what part was caused by other factors, without resort to speculation, then your verdict should be for the defendant. In other words, unless you can say from the evidence that the defendant's negligence was the direct and proximate cause of certain specific damage, then you cannot return a verdict in favor of the plaintiff,* but if you can say that the defendant's negligence was the proximate cause of certain specific injury and damage to the plaintiff, then you can return a verdict in his favor for that damage and that alone, but you cannot include in the amount you allow any damages for injuries arising as the proximate result of any other cause.

"In this connection, however, you are instructed that the law has not furnished us with any fixed standard with which to measure pain and suffering. With reference to these matters you must be governed by your own good judgment, by the evidence in the case and by the law as I have given it to you.

"It will be improper for you to arrive at the amount to be awarded the plaintiff, if you find that he should be awarded damages by the so-called 'quotient' method, that is, by first agreeing to be bound by, and then arriving at such amount by having each individual juror set down the amount he or she considers the proper award, and then adding such sums together and dividing that amount by twelve and making the result

the amount to be awarded by the jury as damages. This method is illegal and not to be followed."

Some complaint is made that no proper exception was taken to this instruction under Rule VI of this court (Rem. 1927 Sup., § 308-6). The exception taken was as follows:

"That there is not incorporated in that instruction the idea that, if plaintiff's present damage was caused by one of two causes, for one of which the plaintiff is responsible, and for the other of which the defendant is responsible, then the jury may award damages for the whole injury if they are incapable of segregation."

The exception taken, we think, clearly points out one particular at least in which the instruction is faulty. We have approved the rule that

" '. . . if by reason of delicate condition of health the consequences of a negligent injury are more serious still, for those consequences the defendant is liable, although they are aggravated by imperfect bodily conditions.' " *Jordan v. Seattle,* 30 Wash. 298, 70 Pac. 743.

In the last cited case the court charged the jury:

" 'If the jury believes from the evidence that plaintiff was injured through the negligence of the defendant, and that, at the time of the injury, plaintiff was suffering from a varicose condition of the veins in the lower part of the left leg, and that such injury aggravated, augmented, and accelerated such varicose condition, and the suffering occasioned thereby, then your verdict will be for the plaintiff, unless you find that these conditions not only might have arisen, but must have arisen, if the negligence of the defendant (if you find it negligent in the premises) had not intervened. If the original act of the defendant was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which were not wrongful,

the rule is that the injury shall be referred to the wrongful cause,—pass by those which were innocent. If one is reasonably responsible for the act, he is chargeable for direct result of the act, however surprising.' "

This court also quoted with approval in the same case:

" 'If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. Cooley, Torts (2d ed.), p. 76, par. 3.' "

We think the instruction quoted is objectionable. It is not in harmony with the case of *Griffis v. Brown,* 149 Wash. 203, 270 Pac. 819, for in that case it was recognized that the respondent was entitled to recover at least for the pain and suffering incident to the removal of the needle point, and the healing of the incision necessary therefor. As we read the record in this case, the better medical testimony agrees to what was testified by Dr. Eikenbary:

"I have already explained that the sponge holds a certain amount of infection, prevents free drainage, and therefore should be removed and not leave it there . . . it retains the drainage of pus, therefore the wound does not heal as well—don't heal."

Respondent is, of course, not liable in any way for the original injury, nor is he liable for any of the pain and suffering caused thereby, nor for such as would naturally follow from such an operation as defendant performed, but we think that there is no dispute over the question of negligence, and further, that there is no dispute over the question that it was necessary to remove the sponge as soon as it was discov-

ered, and that some damage was caused by the act of leaving the sponge in the wound, and that there was naturally some pain and suffering in its removal. The instruction above quoted places too great a burden on appellant. It requires him to prove to a certainty each particular item of pain and suffering resulting from respondent's wrongful act, whereas the rule is that, negligence having been established from which bad results would naturally follow, the burden is on the respondent to limit the recovery by showing that the pain and suffering were the result of intervening causes.

Reversed.

MILLARD and BEALS, JJ., concur.

PARKER, J. (concurring)—I concur in the holding that the instruction was erroneous, but dissent from the view that the court can say as a matter of law that respondent was negligent.