[No. 22377.   Department Two.   September 17, 1930.]

MINERVA F. LOVELESS, *as Administratrix, Respondent,*
v. RED TOP CAB COMPANY *et al., Appellants.*[1]

*Poe, Falknor, Falknor & Emory,* for appellants.
*Vanderveer, Beardslee & Bassett* and *Vanderveer,
Beardslee & Bassett,* for respondent.

MAIN, J.—Milo J. Loveless brought this action to
recover damages for personal injuries, and died prior
to the time the cause was tried.   After his death,

[1]Reported in 291 Pac. 344.

Minerva F. Loveless, his widow, was appointed administratrix of the estate, and was substituted as party plaintiff in this action. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff for $7,500. Motions for judgment notwithstanding the verdict and for new trial being made and overruled, judgment was entered on the verdict, from which the defendants appeal.

The facts may be summarized as follows: The accident out of which the litigation arose happened at the intersection of Second avenue and Spring street in the city of Seattle, August 6, 1928, at about eleven o'clock in the forenoon. The day was clear and the pavement dry. It is sufficiently accurate to say that Second avenue extends north and south, and Spring street east and west. Second avenue is a street upon which the traffic is heavy, and is traversed by street car tracks. At the time of the accident, Mr. Loveless was walking across Second avenue from east to west on the north crossing of Spring street. When he reached the center or a little beyond, he was struck by a taxicab, owned by the appellant Red Top Cab Company, and driven at the time by one of its employees, E. S. Cordell. The taxicab was going north on Second avenue. At this time, there were two lines of traffic on the east side of the street, and the taxicab was in the one near the center.

Mr. Loveless was struck by the left front fender in the lower part of the back, fell upon that fender and then to the street. He had a broken left wrist, a cut over the left eye, and a bruise upon the right leg below the knee. He was taken to the hospital where his wounds were dressed, and he remained there for two or three days, when he went to his home. For the next three or four months, he visited the office of his doctor two or three times a week for treatment.

About three weeks after the accident, he began to fail, and his condition grew gradually worse until the time of his death, which occurred April 16, 1929. About a month after the accident, there developed in the lower part of his back a pain which caused him discomfort, and this pain became more acute as time went on. He lost weight and strength continuously. As one witness put it, from about three weeks after the accident, his condition was progressively downward. The doctors thought that the pain in his back was due to arthritis of the spine. About the middle of December, an X-ray was taken of his back, which showed a slight mottling or coloring in the lower spine. For three or four months before his death, he was confined to his room, and most of the time to his bed.

April 13, 1929, he contracted pneumonia and died three days later. After his death, an autopsy was held, and it was then discovered that he had what is called myeloma in the vertebra in the lower part of his back, which is a malignant tumor that destroys the bone tissue.

The principal questions involved are, first, was the myeloma produced by the accident? and, second, if it was so produced, was Mr. Loveless' death promixately caused by the myeloma or by pneumonia?

We will first take up the question as to whether the myeloma was caused by the accident. Prior to being struck in the back by the taxicab, Mr. Loveless had been in good health. About three weeks thereafter, he began to fail, and from then on he continually lost ground, or, as stated, his condition was progressively downward. About a month after the accident, a pain developed in his back. In December, the X-ray showed a coloring or mottling. The pain grew more intense as time went on. The autopsy showed the myeloma and that the bone tissue had been destroyed.

One of the doctors testified that the pain was due to the growth of the tumor. Upon the direct question as to whether the myeloma was caused by the accident, the medical testimony is in direct conflict. One of the doctors called by the respondent testified unequivocally that, in his opinion, it was so caused. Another one testified that he felt confident that the injury at the very least predisposed to the development of myeloma, and that it was a factor in its production. The doctors called by the appellants testified that the myeloma was not caused by the accident. Taking into consideration the history of the case, together with the testimony of the two doctors mentioned as testifying for the respondent, there was substantial evidence to take the question to the jury.

Coming now to the second question of whether the myeloma or the pneumonia caused the death, the testimony is again in dispute. The doctors called by the respondent testified that the primary cause of death was the myeloma caused by the injury to the back, and that the terminal thing that ''carried him off was the pneumonia.'' The doctors called by the appellants testified that pneumonia was the primary and proximate cause of the death. From what was disclosed by the autopsy, it is apparent that death was rapidly approaching, even if pneumonia had not been contracted. Whether death was proximately caused by the myeloma or by the pneumonia, was a question of fact to be determined by the jury. Where the original act was wrongful and would naturally, according to the ordinary course of events, have produced death, as the jury had a right to find in this case, the intervention of pneumonia as the terminal cause does not relieve from liability. In Cooley on Torts, (2d ed.), p. 76, it is said:

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent."

In *Jordan v. Seattle*, 30 Wash. 298, 70 Pac. 743, and *McCormick v. Jones;* 152 Wash. 508, 278 Pac. 171, that paragraph from Cooley on Torts was quoted with approval.

In *Thompson v. Seattle, Renton & Southern R. Co.*, 71 Wash. 436, 128 Pac. 1070, Mrs. Elizabeth Bell was injured through the negligence of the defendant and died some nine months later from pleurisy with effusion, and it was there held that while the immediate cause of death was pleurisy with effusion, following an accident, the proximate cause was the injury. It was there said:

"The appellant next contends that the evidence was insufficient to make a case for the jury on the issue that Mrs. Bell's death was caused by the injuries which she sustained in the accident. It was given in evidence, and apparently conceded, that the immediate cause of her death was pleurisy with effusion, and the appellant apparently argues that this was the proximate cause of her death. But clearly the proximate cause of her death was the cause that produced the pleurisy with effusion; that is to say, whether the pleurisy with effusion was or was not the result of the accident. On this question, the most that can be said is that the evidence was conflicting. Being so, it was of course a question of fact for the jury and not one of law for the court. But it will serve no useful purpose to review the evidence. Our perusal of it has convinced us that there was evidence sufficient to sustain the verdict, and this is as far as we have a right to inquire."

It would be difficult to make any substantial distinction between that case and the one now before us. The

jury, under the evidence in this case, had the right to find that Mr. Loveless' death was proximately caused by the accident.

In the case of *Anton v. Chicago, Milwaukee & St. Paul R. Co.,* 92 Wash. 305, 159 Pac. 115, to which special attention has been called, the evidence that the tuberculosis which developed after the accident was caused by the accident was materially less positive and direct than is the evidence in the case now before us.

Many cases from other jurisdictions are cited, which it is not necessary here to review in detail, because, as already indicated, this court is committed to the rule stated in Cooley on Torts above referred to. One of the cases specially relied on by the appellant is that of *Mayor and City Council of Nashville v. Reese,* 138 Tenn. 471, 197 S. W. 492, but that case is readily distinguishable because there,

". . . no witness is introduced who undertakes to say that the deceased received fatal injuries, or injuries which would have proved fatal, in and of themselves, by reason of the fall from the wagon."

In the present case there was such evidence.

There is some contention that the evidence was not sufficient to take the case to the jury upon the primary question of negligence, but little need be said on this question. There was abundant evidence from which the jury had a right to find that the driver of the taxicab was guilty of negligence in at least two respects; one, excessive speed, and the other, failure to yield to the pedestrian the right of way at the intersection accorded him by the ordinance of the city. We find nothing which would justify a holding that Mr. Loveless was guilty of contributory negligence as a matter of law.

There are a number of assignments of error with reference to instructions given and requests refused,

480

all of which we have considered, and in none of them do we find substantial merit. The case was properly submitted to the jury by the instructions given, and there was no error in not giving the requests the refusal of which was complained of.

The judgment will be affirmed.

MITCHELL, C. J., HOLCOMB, and FULLERTON, JJ., concur.