[No. 32178.   Department One.   November 28, 1952.]

THOMAS A. REEDER, *Respondent,* v. SEARS, ROEBUCK AND COMPANY, *Appellant.*[1]

[1]Reported in 250 P. (2d) 518.

*Elliott, Lee & Thomas* and *Frank Hunter,* for appellant.
*Williams & Williams,* for respondent.

DONWORTH, J.—This is an action to recover damages for personal injuries allegedly suffered as the proximate result of defendant's negligence in maintaining for the use of plaintiff and other customers a ramp (alleged to be unsafe) which collapsed and fell to the ground while plaintiff was walking thereon.

Defendant is a New York corporation doing a merchandising business in this state. In its answer, it denied the

material allegations of the complaint and alleged as an affirmative defense that plaintiff assumed the risk of using the ramp and was guilty of contributory negligence. Plaintiff denied these allegations in his reply.

Trial of the action before the court sitting with a jury resulted in a verdict for plaintiff. After denying defendant's alternative motions for judgment notwithstanding the verdict and for a new trial, the court entered judgment on the verdict. Defendant has appealed.

The accident in issue occurred at a warehouse occupied by appellant in Seattle in which it conducted a retail tire sales and tire service business. There was a front or office entrance to the building, which was provided with steps and a porch, and one or two side entrances. At the rear of the building were two wide doors of the size ordinarily used for the purpose of loading and unloading truck cargo. The floor of the warehouse did not extend beyond the two doors to form a loading dock, but ended abruptly at the doorway. Between the two large doorways was a platform, which extended outward from the building for several feet and which had a short vertical ladder fastened to its outer end as a means for climbing onto the platform. The platform was approximately at the same height from the ground as the warehouse floor, but it provided no means of access into the warehouse unless one were to "swing around," as respondent phrased it, by grasping the edge of the doorway, stepping over space and pulling himself erect in the doorway. From appellant's own photographs which were admitted at the trial, it would appear to be somewhat of a gymnastic feat to step from the platform onto the warehouse floor.

The warehouse floor and the platform were each approximately forty-one inches above a concrete apron, which extended outward at ground level from the rear of the building. For more than two years prior to September 2, 1949, appellant had maintained a portable wooden ramp as a means of access to the rear doors of the warehouse. This ramp was fifteen feet in length and was constructed

of three two-inch by six-inch timbers, which were held together by means of wooden cleats nailed across them at intervals. The lower end of the ramp merely rested upon the concrete apron; it was not blocked or anchored in any way. The upper end rested upon the threshold of the doorway; it was not fastened to the threshold or the building in any way.

On September 1, 1949, according to respondent, he called at the front office in the warehouse for the purpose of having a tire repaired. He asked for appellant's service department manager, a Mr. Courtwright, with whom he had done business on other occasions, and was directed to go to the rear of the building. He drove his car to the rear, located Courtwright and was invited by him to enter the building through one' of the large doorways. Respondent reached the doorway by walking up the ramp. After having ascended the ramp, respondent conversed with Courtwright, left his tire to be inspected and repaired, and walked back down the ramp to the ground level.

The next afternoon (September 2nd), he returned to the warehouse, drove to the rear, and was again invited by Courtwright to enter the building. After having been told that his old tire was beyond repair, he purchased a new tire and requested Courtwright to mount it on his car.

Courtwright preceded respondent down the ramp, rolling the tire. At about the time Courtwright stepped off the lower end of the ramp, the upper end slipped off the threshold and dropped to the concrete apron. Respondent testified that he had just put his full weight on the ramp when it collapsed and fell, dropping him almost the entire forty-one inches to the concrete.

Respondent experienced an immediate pain in his back as a result of the fall and consulted a doctor the next day. The doctor diagnosed his condition as a muscular and ligamentous injury to his low back, which was superimposed on certain degenerative changes in his spine. His fall, according to his doctor's testimony, caused an arthritic condition in his spine to be lighted up and become active.

The doctor fitted him with a support belt to relieve his back, prescribed physiotherapy treatments, and advised him to cease working for a while and thereafter to avoid all heavy work or heavy lifting. It was the doctor's opinion that respondent would experience continued pain and trouble with his back as a result of his fall because it had lighted up the latent arthritic condition in his back.

Respondent was employed at the Boeing plant at the time of the alleged injury. In June, 1949, three months prior to this accident, he had wrenched and injured his back while working at the Boeing plant. He received medical aid benefits under the workmen's compensation act for that injury, but his claim had been closed without any compensation for time loss and without any award for disability. Respondent and his physician testified that at the time of his fall (September, 1949), he had recovered from the effects of the Boeing accident.

In addition to working for the Boeing Airplane Company, respondent during the summer season operated a lake resort near Seattle. There was substantial evidence that, as a result of his fall, he had become physically unable to perform the work necessary in operating and maintaining this resort. His proof of special damages included medical expenses, loss of wages at the Boeing plant, and the cost of labor which he was forced to employ for work around the resort.

■■ Appellant has assigned error to the court's refusal to give certain requested instructions, the first of which advanced the theory that if the jury should find that appellant had provided other, safe means of entrance to the warehouse, then respondent in failing to use them had assumed all risk of injury resulting from use of the ramp.

Passing, without opinion, the question whether the theory of assumption of the risk is applicable to the present case, which does not involve a master and servant relationship (see *Walsh v. West Coast Coal Mines,* 31 Wn. (2d) 396, 197 P. (2d) 233), we believe the court did not err in refusing the proposed instruction. Appellant's witnesses did not

deny that the ramp was regularly used by customers as well as by its employees, nor that respondent was invited by Courtwright to use it. From appellant's photographs and the other evidence, the jury could have found that the ramp was the only reasonable and convenient means of entrance to the rear of the building and that respondent had been invited to use it. Whether respondent was guilty of contributory negligence in failing to observe that it was not securely fastened to the building at its upper end or that it was in a dangerous position, was clearly a question for the jury to determine. The assignment of error is without merit.

Appellant also complains because the trial court refused to give its requested instruction to the effect that the ramp was a simple tool and that it could not be held liable for an injury resulting from its use. This assignment is without merit. The simple tool doctrine is applicable in cases involving the relationship of master and servant only.

Appellant next assigns error to the court's refusal to instruct that, if the jury found that respondent had sustained a previous injury to his back and was suffering from a congenital back defect, he should be allowed only such damages as were caused by appellant's negligence, if any. In support of this assignment, it cites *Cranford v. O'Shea,* 83 Wash. 508, 145 Pac. 579; *Griffis v. Brown,* 149 Wash. 203, 270 Pac. 819; *McCormick v. Jones,* 152 Wash. 508, 278 Pac. 181, 65 A. L. R. 1019; *Murgatroyd v. Dudley,* 184 Wash. 222, 50 P. (2d) 1025. The foregoing cases all involved the segregation of damages suffered as the result of malpractice by a physician or dentist from damages which resulted from the injury or disease for which the plaintiff patient had sought treatment. These cases are readily distinguishable.

There is no doubt that respondent had a back which was congenitally weak or in which there was a degenerative process taking place. There was no evidence that he suffered prior to his fall any disability or pain in his back because of any pre-existing condition or defect. The undisputed testimony relative to the Boeing accident showed that he had completely recovered from it.

Appellant's own medical experts testified that a person with a weak back such as respondent had was more likely to be injured by a fall than would be a person with a normal back. Appellant's medical witnesses also testified that a fall often precipitated or lighted up an arthritic condition in the spine which, prior to the fall, had been inactive or latent. There was also expert medical testimony that respondent might have gone along indefinitely without any active symptoms of arthritis unless and until something occurred to light it up.

There is, then, in the record no evidence that respondent was suffering pain or disability in his back as the result of a prior injury. He did have a diseased or congenitally weakened back.

In *Jordan v. Seattle,* 30 Wash. 298, 70 Pac. 743, we approved an instruction which read in part as follows:

" 'If the original act of the defendant was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which were not wrongful, the rule is that the injury shall be referred to the wrongful cause,—pass by those which were innocent. If one is reasonably responsible for the act, he is chargeable for direct result of the act, however surprising. The rule is, if by reason of delicate condition of health the consequences of a negligent injury are more serious still, for those consequences the defendant is liable, although they are aggravated by imperfect bodily conditions.

" 'The duty of caring and of abstaining from the unlawful injury of another applies to the sick, the weak, the infirm, as fully as to the strong and healthy; and when the duty is violated the measure of damages is for the injury done, even though the injury might not have resulted but for the peculiar physical condition of the person injured, or may have been augmented thereby. The proximate cause of an injury is the efficient cause; the one that necessarily sets the other cause in motion.' "

The trial court in the present case, by its instruction No. 10, charged the jury substantially to the same effect. Ap-

pellant has not assigned as error the giving of instruction No. 10.

We have consistently reaffirmed the rule embodied in the instruction given in the *Jordan* case, *supra*; *Frye v. Jensen,* 144 Wash. 553, 258 Pac. 497, and cases cited; *McCormick v. Jones, supra*; *Loveless v. Red Top Cab Co.,* 158 Wash. 474, 291 Pac. 344, 79 A. L. R. 347. It is in accord with the weight of authority. McCormick on Damages (1935 ed.) 269, § 76; 15 Am. Jur. 488, Damages, § 80; 25 C. J. S. 478, Damages, § 21.

We have read all the instructions given by the court and are of the opinion that, taken as a whole, they could not have misled the jury as to the proper basis for awarding damages to respondent. In view of the undisputed evidence that, prior to the time of his fall on the ramp, respondent was suffering no pain or disability in his back as the result of any prior injury or defective physical condition, it was not error to refuse the requested instruction.

Appellant has complained of instruction No. 11 given by the court, which, it says, contained unfortunate language. It has cited no authority nor made any argument in support of this assignment of error. We will not, therefore, consider it. *Fowles v. Sweeney, ante* p. 182, 248 P. (2d) 400, and cases cited.

The remaining instructions complained of have not been set forth in full in appellant's brief, as required by Rule on Appeal 42 (1) (f), 34A Wn. (2d) 45. They will not be considered. *De Longe v. Richfield Oil Corp.,* 35 Wn. (2d) 803, 215 P. (2d) 701, and cases cited.

Appellant's other assignments of error are general in nature and have been answered by what we have already said herein.

There was substantial evidence from which the jury could find that appellant was negligent and that respondent suffered severe injuries from his fall. Whether respondent was guilty of contributory negligence in failing to notice the dangerous manner in which the ramp was rested upon the threshold and the concrete apron, was, under the evi-

dence admitted at the trial, a question for the jury. It decided that issue against appellant.

We find no error in the record, and the judgment must be, and it hereby is, affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

