
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IBRAHIM A. ABDULWAHID, | ) | |
| | ) | No. 37484-0-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EASTERN STATE HOSPITAL, a | ) | UNPUBLISHED OPINION |
| division of WASHINGTON STATE | ) | |
| DEPARTMENT OF SOCIAL & | ) | |
| HEALTH SERVICES, a Washington | ) | |
| State Agency; and PHILLIP PRICE, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Ibrahim Abdulwahid appeals the summary judgment dismissal of

his lawsuit against Eastern State Hospital seeking to recover for damages suffered when

he was assaulted in 2012 by another patient. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Ibrahim Abdulwahid was an inpatient at Eastern State Hospital in July 2012 when

he was assaulted and allegedly seriously injured by Phillip Price, another inpatient. It

was after dinner, while Mr. Abdulwahid was making a phone call, that Mr. Price

allegedly attacked him from behind.  Earlier in the day, Mr. Price had inexplicably struck

Mr. Abdulwahid in the chest during a smoke break.  Mr. Abdulwahid responded by

completing paperwork asking to be moved to a different floor of the hospital.

Just short of three years later, Mr. Abdulwahid sued Mr. Price and the hospital.

Among the allegations in support of his negligence claim against the hospital were the

following:

> 4.2. Eastern State Hospital, by and through its employees, was in exclusive control of Plaintiff's environment.  Eastern State Hospital and its employees owed Plaintiff the duty to exercise ordinary care to protect him and provide for his safety while he was in Defendant Eastern State Hospital's care.
> 4.3. Eastern State Hospital, by and through its employees, knew or should have known that Phillip S. Price presented an unreasonable risk of harm to other patients, including Plaintiff.
> 4.4. Eastern State Hospital, by and through its employees acting within the scope of their employment, failed to exercise reasonable care to adequately supervise and monitor Phillip S. Price, or otherwise take reasonable measures to protect Plaintiff from harm.

Clerk's Papers (CP) at 3.  Mr. Abdulwahid obtained a default judgment against

Mr. Price in July 2016.

Over three years later, on December 26, 2019, the hospital moved for summary

judgment dismissal of Mr. Abdulwahid's claim, noting its motion for hearing on January

29, 2020.  In a supporting affidavit, an assistant attorney general (AAG) testified on

personal knowledge that

> 3. On August 21, 2015, Defendant Eastern State Hospital served Plaintiff with written discovery.  Among the information sought through

2

> interrogatories and requests for production was discovery requests for the Plaintiff to identify each expert witness that he would rely upon for testimony at the time of trial and requests for reports or opinions created by each expert.
>
> 4. After several months without any response to Defendant's written discovery, both sides engaged in a CR 26(i) conference.
>
> 5. Plaintiff never submitted responses to Defendant's written discovery, nor has Plaintiff identified any expert witnesses or opinions that he would rely upon at trial.

CP at 13-14. The hospital argued that the claims against it should be dismissed since Mr. Abdulwahid did not have expert testimony establishing the relevant standard of care and causation.

On January 6, 2020, Mr. Abdulwahid moved to re-set the summary judgment hearing to a date on or after February 6, based on his lawyer's unavailability. The hearing was re-set for February 11.

On January 16, Mr. Abdulwahid moved for a further continuance of the hearing until the week of February 24 to 28 "to allow plaintiff's expert to submit his affidavit as to the [hospital's] violation of the standard of care." CP at 29. In a supporting declaration, Mr. Abdulwahid's lawyer explained that his office had retained Dr. Safa Rubaye, an expert in hospital administration, to review hospital records and the history of Mr. Abdulwahid's claims. The lawyer stated he would be out of the office until February 4 and unable to review Dr. Rubaye's findings and prepare an affidavit until his return. He provided the curriculum vitae (CV) of Dr. Rubaye that revealed that the doctor was

3

not licensed in Washington. The CV gave no indication that Dr. Rubaye had ever practiced medicine in Washington.

In opposing the hospital's summary judgment motion, Mr. Abdulwahid argued that the hospital had only speculated, not shown, that he lacked an expert to provide required evidence of a breach of the standard of care. Alternatively, he argued that expert testimony was not required in his case.

In an accompanying affidavit, Mr. Abdulwahid elaborated on the assault and the events preceding it:

> [A]t approximately 3:00 p.m. a number of patients gathered in the hallway preparing for our 3:00 smoke break. There were approximately 20 to 30 of us waiting. In addition, there were counselors present to escort us to the smoking area. As we were going down the stairs, I was walking next to a person, later identified as Phillip Price. Mr. Price stumbled on the stair and when I asked if he was alright, he hit me with his fist in the middle of my chest with such force that it hurt. I then left the group and went immediately to the supervisors station and told the supervisor of the assault by Mr. Price and asked to be moved to a different floor of the hospital. I then went on my smoke break.
>
> Following the smoke break, I returned to the nurses station and requested to be moved to another floor. I was told that I needed to fill out a form. I filled out the form, showing my name and my current room number. The form required me to state why I wanted to be moved. I stated on the form that I did not feel safe because of the assault and that my chest was still hurting from Mr. Price having punched me.
>
> . . . .
>
> . . . At approximately 9:00 p.m. I went to the phone location, across the hall from the nurses station. I was attempting to call my aunt. While waiting for her to answer, Mr. Price came up behind me and struck me in the back of the head, forcing my face onto the telephone desk. I turn to face him and he continued to punch me in the face, about 5 or 6 times. At

4

> this time I fell out of the chair, that I had been sitting in, and fell to the floor. A male nurse came to see what had occurred. At that time Mr. Price ran from the area.

CP at 45.

On February 5, the court granted Mr. Abdulwahid's request to continue the hearing a second time. It re-set the hearing for February 27.

On February 21, Mr. Abdulwahid filed a motion for leave to file Dr. Rubaye's declaration late, or to re-set the summary judgment hearing a third time. A supporting affidavit from Mr. Abdulwahid's lawyer explained that on January 20 he had served written discovery on the hospital seeking information "relevant to Mr. Price and the actions taken by the hospital once the initial assault on plaintiff was reported to the hospital staff." CP at 70. The affidavit stated he had not yet received responses and that in a "preliminary conversation" with Dr. Rubaye on February 6, the doctor had "requested additional background information concerning Mr. Price." *Id.* at 67, 70.

The trial court proceeded with the summary judgment hearing on February 27. It considered and denied Mr. Abdulwahid's request to extend time to file an expert opinion. It granted the hospital's motion for summary judgment and dismissed Mr. Abdulwahid's claims with prejudice.

Mr. Abdulwahid filed a motion for reconsideration, which was denied. He appeals.

5

ANALYSIS

Standard of Review

When the issue on appeal is the entry of summary judgment, this court's review is de novo; it engages in the same inquiry as the trial court. *Grundy v. Thurston County*, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment is appropriate if the pleadings demonstrate that there is no genuine issue as to any material fact. CR 56(c). This court views all facts and all reasonable inferences in the light most favorable to the nonmoving party. *Rhoades v. City of Battle Ground*, 115 Wn. App. 752, 758, 63 P.3d 142 (2002). Summary judgment is proper only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

I.    THE HOSPITAL MADE A PRIMA FACIE SHOWING THAT MR. ABDULWAHID LACKED EVIDENCE TO ESTABLISH AN ESSENTIAL ELEMENT OF HIS CASE

There are two ways a defendant can move for summary judgment. *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 21, 851 P.2d 689 (1993). "First, the defendant can set out its version of the facts and allege that there is no genuine issue as to the facts as set out." *Id.* "Alternatively, a party moving for summary judgment can meet its burden by pointing out to the trial court that the nonmoving party lacks sufficient evidence to support its case." *Id.* A defending party employing the second option "must identify those portions of the record, together with the affidavits, if any, which he or she believes

6

demonstrate the absence of a genuine issue of material fact." *Id.* at 22. The requirement

that the moving party set forth specific facts does not apply because "'a complete failure

of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial.'" *Id.* at 23 (quoting *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). A defendant may bring a motion for

summary judgment before discovery is complete. *Perez-Crisantos v. State Farm Fire &*

*Cas. Co.*, 187 Wn.2d 669, 685-86, 389 P.3d 476 (2017).

The hospital supported its motion for summary judgment with the affidavit of an

AAG stating that well over three years earlier, the hospital had served Mr. Abdulwahid

with written discovery seeking his disclosure of the expert witnesses on who he would

rely at the time of trial and their opinions. The civil rules generally require answers or

objections to such discovery within 30 days. CR 33(a), 34(b)(3). The AAG further

stated that counsel for the hospital had requested and engaged in a CR 26(i) conference

with plaintiff's counsel in an effort to obtain responses. The declaration of a second

AAG submitted in February 2020 established that at the CR 26(i) conference, which took

place in June 2017, Mr. Abdulwahid's lawyer represented that discovery responses would

be forthcoming as soon as draft answers could be reviewed and signed by his client.

The hospital's demonstration that Mr. Abdulwahid failed to respond for well over

three years to discovery seeking his expert's identification and opinions satisfied its

burden in moving for summary judgment.

7

II.     MR. ABDULWAHID'S SUBMISSIONS DID NOT PRESENT EVIDENCE OF (1) A
        WASHINGTON STANDARD OF CARE HE CONTENDED WAS BREACHED, (2) A GROSS
        DEVIATION FROM THE STANDARD OF CARE RECOGNIZABLE BY A LAYPERSON, OR
        (3) CIRCUMSTANCES SUPPORTING AN INFERENCE OF NEGLIGENCE UNDER THE
        DOCTRINE OF RES IPSA LOQUITUR

In Washington, actions for injuries resulting from health care are governed by

chapter 7.70 RCW. *Miller v. Jacoby*, 145 Wn.2d 65, 72, 33 P.3d 68 (2001). Liability can

be established by proving that the "injury resulted from the failure of a health care

provider to follow the accepted standard of care." RCW 7.70.030(1). For purposes of

the statute, "health care providers" include hospitals. RCW 7.70.020(3). RCW 7.70.040

provides that the plaintiff in an action asserting an injury resulting from a health care

provider's failure to follow the accepted standard of care must show that the defendant

health care provider "failed to exercise that degree of care, skill, and learning expected of

a reasonably prudent health care provider at that time in the profession or class to which

he or she belongs, in the state of Washington, acting in the same or similar

circumstances," and that "[s]uch failure was a proximate cause of the injury complained

of."

"In general, expert testimony is required when an essential element in the case is

best established by an opinion which is beyond the expertise of a layperson. Medical

facts in particular must be proven by expert testimony unless they are observable by [a

layperson's] senses and describable without medical training. Thus, expert testimony

will generally be necessary to establish the standard of care and most aspects of

8

causation." *Harris v. Robert C. Groth, MD, Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113

(1983) (alteration in original) (footnote, internal citations and quotations omitted).

Mr. Abdulwahid failed to present expert testimony establishing the hospital's

standard of care and causation. Two of his arguments on appeal are that expert testimony

was not required for the type of negligence he was asserting. We address them in turn.

> *Facts establishing negligence that Mr. Abdulwahid contends are observable and describable without medical training*

Mr. Abdulwahid contends the hospital owed him a duty of protection, because

there is a special relation between a mental health care provider and potential victims of a

patient who the provider knows has propensities to harm others. The hospital

acknowledges it has a duty to protect patients against reasonably foreseeable risks of

harm including dangerous patients, but it argues that Mr. Abdulwahid does not present

facts that lay jurors could determine constituted negligence without expert testimony

about what a reasonable inpatient psychiatric hospital would or would not have done in

this situation.

Mr. Abdulwahid conflates the existence of a mental health care provider's "special

relation" with medical negligence that can be proved without expert testimony. They are

two different things. The significance of a special relation is that it gives rise to a duty to

prevent a third party from causing harm to another that does not otherwise exist. *Volk v.*

*DeMeerleer*, 187 Wn.2d 241, 255, 386 P.3d 254 (2016) (discussing RESTATEMENT

(SECOND) OF TORTS § 315 (AM. LAW. INST. 1965)).  A claim stemming from a mental

healthcare provider's breach of this duty is a medical negligence claim.  *Id.* at 254.

Establishing that the defendant breached the duty might be provable without expert

testimony, but often it will not be.  As the Supreme Court observed in *Volk*, "[t]he

foreseeability of the victim, as well as what actions are required to fulfill this duty, is

informed by the standards of the mental health profession."  *Id.* at 255.

Mr. Abdulwahid relies on *State v. Petersen*, 100 Wn.2d 421, 671 P.2d 230 (1983)

in conflating the issues, but *Petersen* analyzes them as distinct.  The plaintiff in that case

sued Western State Hospital (Western) for its decision to release rather than seek

additional confinement for Larry Knox, who had been involuntarily committed after

cutting out his left testicle.  Five days following Knox's release from Western, Cynthia

Petersen was making a lawful turn at an intersection when her car was struck by a vehicle

driven by Knox, who ran a red light driving 50 to 60 miles an hour.  *Id.* at 422-23.

Evidence at trial established that at the time of Knox's involuntary commitment he

was serving probation for a burglary conviction, and among conditions of his probation

were that he participate in mental health counseling and refrain from using controlled

substances.  *Id.* at 423.  Knox's treating provider at Western was aware Knox was on

probation but was evidently unaware of the probation terms.  The provider learned that

Knox had an extensive history of drug abuse, including frequent recent use of angel dust.

*Id.*  Knox was released based on the treating provider's opinion that he was not

schizophrenic but had suffered a schizophrenic reaction to the angel dust, from which he had recovered. *Id.* at 424. This, despite Knox being apprehended the day before by hospital security personnel when he drove his car on hospital grounds recklessly, spinning it in circles (he had been allowed to go home for Mother's Day). *Id.* at 424.

Evidence at trial established that Knox was under the influence of drugs at the time he struck Petersen's car and that he had flushed the antipsychotic medication he received from Western down the toilet. *Id.* The jury also learned that a half year after Knox drove into Petersen's car, he killed a couple and raped their daughter. It heard the testimony of three psychiatrists who had treated Knox in periods either before or following his release from Western, all of whom testified that he *did* suffer from schizophrenia. *Id.* at 438-39.

While Petersen presented the misdiagnosis evidence, she did not call an expert to testify to the standard of care of a psychiatric hospital making discharge decisions. For that reason, Western's appeal challenged the sufficiency of her evidence to establish a violation of the standard of care that would support her claim. The Supreme Court held that given Petersen's other evidence, the standard of care evidence was not required. "Even in a professional malpractice case . . . expert testimony is not required if the

11

practice of a professional is such a gross deviation from ordinary care that a lay person could easily recognize it." *Id.* at 437.[1]

Unlike the evidence presented in *Petersen*, Mr. Abdulwahid offered no clinical diagnoses of Mr. Price or evidence that he had dangerous propensities. His own complaint included a necessary averment that the hospital "knew or should have known that Phillip S. Price presented an unreasonable risk of harm to other patients," CP at 3, yet the only evidence Mr. Abdulwahid offered of the hospital's notice was testimony that he requested a room change and attributed it to being struck by Mr. Price. (As the hospital points out, the request form was not itself submitted as evidence by Mr. Abdulwahid.)

By Mr. Abdulwahid's lawyer's own admission, Dr. Rubaye was not prepared to express an opinion without more information about what the hospital knew about Mr. Price. Since Mr. Abdulwahid did not present evidence of "such a gross deviation from ordinary care that a lay person could easily recognize it," he needed expert testimony.

---

[1] Probably the best known example of a deviation recognizable by laypersons is leaving a foreign object in a patient's body, which is negligent as a matter of law. *See Miller*, 145 Wn.2d at 72 (citing *McCormick v. Jones*, 152 Wash. 508, 510-11, 278 P. 181 (1929)). "Simply put, it is not reasonable prudence to unintentionally leave a foreign substance in a surgical patient." *Bauer v. White*, 95 Wn. App. 663, 668, 976 P.2d 664 (1999).

12

*Res ipsa loquitur*

Alternatively, Mr. Abdulwahid argues that res ipsa loquitur should have

substituted for proof of negligence. In some cases, breach of duty may be proved by

circumstantial evidence under the doctrine of res ipsa loquitur. *Miller*, 145 Wn.2d at 74.

Three criteria must be met:

> (1) [T]he occurrence producing the injury must be of a kind which
> ordinarily does not occur in the absence of negligence; (2) the injury is
> caused by an agency or instrumentality within the exclusive control of the
> defendant; and (3) the injury-causing occurrence must not be due to any
> contribution on the part of the plaintiff.

*Id.* (alteration in original) (internal quotation marks omitted) (quoting *Howell v. Spokane*

*& Inland Empire Blood Bank*, 114 Wn.2d 42, 58, 785 P.2d 815 (1990)).

An injury caused by an assault by another patient in a mental health facility is not

an injury of a kind that ordinarily would not occur absent negligence. And while Mr.

Price, as an inpatient, was subject to the hospital's authority and control, that is not the

same as saying that his *actions* were within the hospital's exclusive control. It was Mr.

Price's independent, not hospital-controlled, actions that caused Mr. Abdulwahid's

injury.

Finally, the basis on which the res ipsa loquitur doctrine will permit an inference

of negligence is when evidence of the cause of the injury is practically accessible to the

defendant but inaccessible to the injured person. *Pacheco v. Ames*, 149 Wn.2d 431, 436,

69 P.3d 324 (2003). Mr. Abdulwahid is not alleging that the cause of his injuries is not

13

knowable to him. He asserts that the hospital, aware that Mr. Price posed a danger to Mr. Abdulwahid, did nothing. It is easy to imagine the type of evidence Mr. Price could have obtained through discovery that would support or refute this assertion. He has simply failed to obtain it.

III.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING A CONTINUANCE

Finally, Mr. Abdulwahid argues the court abused its discretion when it denied his motion for a continuance and refused to consider a late affidavit.

At the time of the duly-noted and twice-continued hearing on the hospital's summary judgment motion, there *was* no late-produced affidavit. There was only the question of whether the trial court would decide the motion based on the evidence filed up to that time or grant a continuance. Cases like *Keck v. Collins*, 184 Wn.2d 358, 369, 357 P.3d 1080 (2015), and *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 498, 933 P.2d 1036 (1997), involve a plaintiff's evidence that is sufficient and available at the time of decision but that is disregarded because it was tardily produced. That case law does not apply. At issue is CR 56(f), which authorizes a continuance where it appears, "for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition."

It is well settled that a party asking for a continuance of a properly-noted summary judgment hearing must make a heightened showing of need for particular discovery. The trial court may deny a CR 56(f) motion for continuance if:

> "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact."

*Farmer v. Davis*, 161 Wn. App. 420, 430-31, 250 P.3d 138 (2011) (quoting *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)). We review a trial court's decision to deny a continuance under CR 56(f) for abuse of discretion. *Id.* at 431.

Mr. Abdulwahid had been on notice since receiving the hospital's discovery in August 2015 that it would probably hold him to his burden of presenting expert testimony. The need to line up an expert should have taken on new urgency when the hospital requested a CR 26(i) conference. By February 27, 2020, Mr. Abdulwahid did not have in hand even the declaration of a qualified expert suggesting that the expert was familiar with the Washington standard of care and close to being in a position to provide opinion testimony in support of Mr. Abdulwahid's claim.

Mr. Abdulwahid's argument that the hospital was itself a largely inactive litigant is unpersuasive. If a defendant health care provider believes a plaintiff will be unable to obtain essential expert testimony on the standard of care and causation, it is unsurprising that it will defer other trial preparation activity. It was evident from the outset of the case that Mr. Abdulwahid would need to establish what the hospital knew about any dangerous propensities of Mr. Price. Mr. Abdulwahid should have conducted discovery into what the hospital knew, and was or was not doing.

15

No. 37484-0-III
*Abdulwahid v. E. State Hosp., et al.*

Mr. Abdulwahid fails to show an abuse of discretion in denying a continuance.

Affirmed.[2]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.

---

[2] Mr. Abdulwahid assigns error to the denial of his motion for reconsideration, but that motion simply reargued matters sufficiently raised in the parties' summary judgment briefing. Those issues are resolved by our review of the order granting summary judgment.