[No. 70286-1. En Banc.]
Argued May 15, 2001. Decided October 18, 2001.

MARY LOU MILLER, *Petitioner*, v. KARNY JACOBY, ET AL., *Respondents.*

MADSEN, J., dissents by separate opinion.

*Marcus B. Nash* and *Kim M. Tran* (of *Stafford Frey Cooper*), for petitioner.

*Sherry H. Rogers* and *Marilee C. Erickson* (of *Reed McClure*); *Lory R. Lybeck* and *Kara R. Masters* (of *Lybeck, Murphy*); *Mary H. Spillane* and *Daniel W. Ferm* (of *Williams, Kastner & Gibbs, P.L.L.C.*); and *Katharine W. Brindley*, for respondents.

IRELAND, J. — In this case, we review a Court of Appeals' decision affirming summary dismissal of Petitioner Mary Lou Miller's medical malpractice claims. At issue is

whether expert medical testimony is necessary to a determination that health care providers' actions, in placing a Penrose drain in a patient's body during surgery and in not removing the entire drain postoperatively, constitute negligence.

Whether the drain was negligently placed during surgery is not readily observable to laypersons, and thus expert testimony must be presented to establish the standard of care necessary during the procedure. No such testimony was presented. However, inadvertently leaving a foreign object in a patient's body is negligence as a matter of law. There is a genuine issue of material fact as to the health care providers' alleged negligence in failing to remove the entire drain postoperatively.

Thus, we affirm the summary dismissal of Miller's claim as to Dr. Ireton and reverse the summary dismissal of Miller's claims as to Dr. Jacoby and Northwest Hospital.

## FACTS

On January 30, 1997, Mary Lou Miller (Miller) was admitted to Northwest Hospital by her physician, Robert C. Ireton, M.D. (Ireton). Miller underwent surgery to remove kidney stones (pyelolithotomy) and to repair a malformed right kidney (pyeloplasty).

According to Ireton, the surgery was "uneventful and without complications." Clerk's Papers (CP) at 430. Before final closure of the incision, Ireton placed a Penrose drain in the wound to facilitate postoperative healing.[1] Ireton intended that the Penrose drain would be removed some days later.

Dr. Karny Jacoby (Jacoby), the urologist who provided weekend coverage for Ireton, saw Miller in the hospital on February 1 and February 2. On February 1, Jacoby found that the dressing over the Penrose drain was moist. The dressing was changed, and Jacoby ordered that the drain be

---

[1] A Penrose drain is a piece of soft tubing that is placed into a wound area to drain off fluid.

removed later the same day if the dressing stayed dry.

On the morning of February 2, Leslie Rockom, R.N. (Rockom), an employee of Northwest Hospital, attempted to remove the Penrose drain as Jacoby had ordered. Rockom felt resistance and notified Jacoby, who removed the drain and disposed of it with the soiled dressing.

In her deposition, Rockom estimated that since 1965 she has cared for about 100 patients with Penrose drains. She estimated that in about five cases, she encountered resistance that caused her to notify a physician.

Jacoby stated that she "did not note any resistance or difficulty in removing the drain," so she did not "feel that it was necessary to examine the Penrose drain in detail." CP at 50.

Miller stated that when Rockom tried to remove the drain "it resisted her pull and caused me pain." CP at 383. Miller also stated that when Jacoby removed the drain, the doctor said, "I hope I got it all." CP at 384.

Jacoby was not present when the drain was placed, and Ireton was not present when Jacoby removed the drain. Ireton stated that he was not advised that any difficulty or complication had been encountered in removing the drain.

Ireton next saw Miller on February 3, noted that she was doing well, and discharged her from the hospital. In the course of follow-up visits with Ireton, Miller reported pain in her right flank and abdomen. Ireton ordered tests, including an intravenous pyelogram on April 29, 1997, to evaluate her complaints. The diagnostic imaging report included impressions that there were "post-operative changes consistent with a right pyeloplasty" and that there was "radiopaque material in the soft tissues adjacent to the . . . right kidney." CP at 77. It was reported that the material "may represent a retained drain or sponge." *Id.* The findings were communicated to Ireton, and he informed Miller that he suspected a portion of the Penrose drain had been retained in the area of the surgical site.

Miller subsequently sought treatment by Robert

Weissman, M.D. (Weissman). On May 23, 1997, Weissman performed surgery to remove the foreign body—a 5.5 centimeter length of collapsed plastic tubing. Weissman's operative record contains the following observation:

> After more careful blunt and sharp dissection the drain was identified on the inferior aspect of the incision, several cm anterior to the drain scar, and the drain was grasped and removed intact. The proximal portion was noted to be a straight edge and the distal portion an angled, more ragged and irregular edge, possibly representing where the drain broke off.

CP at 274.

In granting Jacoby's motion for summary judgment, the trial court considered a declaration by Wayne Weissman, M.D., a board-certified urologist, who reviewed the operative record of Miller's second surgery and stated as follows:

> Given the fact that one end of the Penrose drain removed by Dr. [Robert] Weissman was ragged and irregular, it is highly likely that the Penrose drain was inadvertently sutured in place, deep within the wound, below the muscle layers. It is the usual and customary practice to lay the Penrose drain in place, deep within the wound, and only secure the drain with a single superficial suture at the skin level.

CP at 53. He also stated that "it would not be reasonable for Dr. Jacoby to examine in detail the edges of the Penrose drain, as there was no indication of a problem in removing the drain." *Id.* He opined that "Jacoby met the standard of care of a reasonably prudent urologist when removing the Penrose drain." *Id.*

In support of his motion for summary judgment, Ireton submitted a declaration in which he stated that he was personally unaware whether Miller's Penrose drain was inadvertently sutured. He asserted that in the circumstances presented during Miller's surgery, he "fully complied with the standard of care of a reasonably prudent physician." CP at 431.

In opposing the defendants' motions for summary judg-

ment, Miller relied upon her own affidavit, medical records, and the transcript of Rockom's deposition.

## PROCEDURAL HISTORY

Miller filed this medical malpractice action against Ireton, Jacoby, and Northwest Hospital on June 9, 1998. The defendants moved for summary judgment, arguing that because Miller presented no expert testimony, she failed to raise a genuine issue of material fact as to whether the defendants had breached the standard of care. The court granted their motions and dismissed Miller's claims on October 30, 1998.

Miller appealed, and the Court of Appeals affirmed the trial court's summary dismissal of all claims. *Miller v. Jacoby*, 102 Wn. App. 256, 6 P.3d 1204 (2000) (Appelwick, J., dissenting). The majority concluded that "without expert testimony, a layperson could not determine whether the physicians failed to act in a reasonably prudent manner." *Id*. at 258.

This Court granted Miller's petition for review of the Court of Appeals' decision.[2]

## ANALYSIS

Standard of Review

In reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court and considers the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). In this case, all facts and reasonable inferences must be considered in the light most favorable to Miller.

■ Summary judgment is properly granted when there

---

[2] The Court also granted respondents' motions to strike Miller's reply in support of her petition for review. The reply was subsequently filed as a supplemental brief.

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 140, 960 P.2d 919 (1998). A motion for summary judgment "should be granted only if, from all the evidence, reasonable persons could reach but one conclusion." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Statutory Requirements

■ In Washington, actions for injuries resulting from health care are governed by chapter 7.70 RCW. In the instant action, Miller must establish that the "injury resulted from the failure of a health care provider to follow the accepted standard of care[.]" RCW 7.70.030(1). For purposes of the statute, "health care providers" include physicians, nurses, and hospitals. RCW 7.70.020.

RCW 7.70.040(1) provides that the plaintiff in an action for medical malpractice must show that the defendant health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances[.]"

Expert Testimony

■ Generally, expert testimony is necessary to establish the standard of care for a health care provider in a medical malpractice action. *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983). Washington courts, however, have long recognized that inadvertently leaving a foreign object in a patient's body is negligence:

> [T]he court can say, as a matter of law, that, when a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, that act constitutes negligence.

*McCormick v. Jones*, 152 Wash. 508, 510-11, 278 P. 181 (1929). When medical facts are " 'observable by [a layperson's] senses and describable without medical training,' " a

plaintiff can establish the standard of care for a health care provider without expert testimony. *Harris*, 99 Wn.2d at 449 (alteration in original) (quoting *Bennett v. Dep't of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981)).

In the case before us, the proper use, purpose, and insertion of a Penrose drain are not within the common understanding or experience of a layperson. Therefore, Miller must present expert medical testimony to show that Ireton acted negligently. Such testimony must be presented to establish the standard of care under the circumstances.[3]

We disagree with the Court of Appeals' majority that the same conclusion can be reached regarding the actions of Rockom (Northwest Hospital) and Jacoby.

The facts of the instant case vary somewhat from a straightforward "foreign object" case in that Ireton, the surgeon, did not inadvertently leave the Penrose drain in the patient's body. Rather, the drain was deliberately left in place to facilitate recovery. Rockom and Jacoby attempted to remove the drain in a separate, postoperative procedure.

Nevertheless, as Judge Appelwick notes in his dissent, "The moment of Dr. Jacoby's incomplete removal of the drain resulted in a foreign object that was placed in the body intentionally and temporarily during surgery, then becoming a foreign object inadvertently and permanently left in the patient at the completion of surgery." *Miller*, 102 Wn. App. at 268.

Rockom and Jacoby were the health care providers charged with the removal procedure. Rockom, an experienced nurse, stated that she was concerned enough about the resistance when she tried to remove the drain to request Jacoby's assistance. In addition, when viewed in the light most favorable to Miller, it is reasonable to infer

[3] It was speculated that Ireton acted negligently by suturing the drain in place during surgery. Such a conclusion would require medical knowledge beyond that possessed by laypersons. Jacoby's expert witness stated that it is not the usual and customary practice to suture a drain in place in a wound. However, this opinion is not the equivalent of concluding that Ireton's procedure violated the standard of care.

from the statement attributed to Jacoby—"I hope I got it all"—that the doctor was somewhat doubtful about complete removal. A portion of the Penrose drain, a foreign object, inadvertently remained in Miller's body. "Simply put, it is not reasonable prudence to unintentionally leave a foreign substance in a surgical patient." *Bauer v. White*, 95 Wn. App. 663, 668, 976 P.2d 664, *review denied*, 139 Wn.2d 1004 (1999). Expert testimony is not needed to assert negligence under these circumstances.

Res Ipsa Loquitur

Miller argues that the evidence she presented is sufficient to entitle her to the inference of negligence established by the doctrine of res ipsa loquitur.

To prevail on a complaint for negligence, a plaintiff must show duty, a breach of that duty, and injury. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). In addition, a plaintiff must show that the breach of duty was a proximate cause of his or her injury. *Id.* In some cases, breach of duty may be proved by circumstantial evidence under the doctrine of res ipsa loquitur. *Douglas v. Bussabarger*, 73 Wn.2d 476, 482, 438 P.2d 829 (1968).

Under circumstances proper to its application, res ipsa loquitur can apply to physicians and hospitals. *ZeBarth v. Swedish Hosp. Med. Ctr.*, 81 Wn.2d 12, 18, 499 P.2d 1 (1972). For res ipsa loquitur to apply, the following three criteria must be met:

> "(1) [T]he occurrence producing the injury must be of a kind which ordinarily does not occur in the absence of negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury-causing occurrence must not be due to any contribution on the part of the plaintiff."

*Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 58, 785 P.2d 815 (1990) (quoting *Jackson v. Criminal Justice Training Comm'n*, 43 Wn. App. 827, 829-30, 720 P.2d 457 (1986)).

There is no evidence to suggest that Miller contributed to

the injury-causing occurrence. Therefore, the final criterion of the doctrine is met as to Miller's claims against her health care providers.

 However, Miller must also demonstrate that her injury would not ordinarily occur in the absence of negligence. Without knowing the professional standard of care for a health care provider placing a Penrose drain during surgery, a layperson would not be able to determine that Miller's injury would not have occurred absent negligence by Ireton. In addition, Ireton did not have exclusive control of the drain following surgery. The drain appeared to be functioning properly while in place, and Ireton was not present when Rockom and Jacoby removed the drain several days later. For these reasons, the doctrine of res ipsa loquitur is not available to impose liability on Ireton.

While the doctrine may be available as to Rockom and Jacoby, there remains a question of fact in this case as to whether these health care providers had exclusive control of the drain. There is a question of fact as to whether exclusive control can be established so as to allow an inference that Rockom and/or Jacoby were liable under the doctrine of res ipsa loquitur for leaving a piece of the drain in Miller's body. This issue should be presented to the fact finder.

## CONCLUSION

The summary dismissal of Miller's claim as to Dr. Ireton is affirmed. The summary dismissal of Miller's claims as to Dr. Jacoby and Northwest Hospital is reversed. The matter is remanded to the superior court for trial on the merits.

ALEXANDER, C.J., and SMITH, JOHNSON, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J. (dissenting) — The majority here unpersuasively attempts to parse the medical procedure of employing a Penrose drain following surgery into distinct

parts, leading to the anomalous result that plaintiffs in a malpractice claim will be required to introduce expert testimony as to the procedure followed in placing the drain but not as to the procedure for removing it. In my view, there are only two possible approaches to the issue which would yield logical results. Either negligence can be inferred overall from the fact of the injury in this case, or medical knowledge is necessary to determine the relative fault of each of the professionals involved in the procedure. The fact that a piece of medical tubing was left in a plaintiff either supports an inference of negligence as to all the professionals involved in the procedure for the purposes of summary judgment or it supports it for none. Since the majority requires expert medical evidence only as to one part of the procedure, I respectfully dissent.

## Discussion

In numerous rulings this court has held that malpractice must be proved by medical testimony. *Tieg v. St. John's Hosp.*, 63 Wn.2d 369, 387 P.2d 527 (1963); *Fritz v. Horsfall*, 24 Wn.2d 14, 163 P.2d 148 (1945); *Derr v. Bonney*, 38 Wn.2d 678, 231 P.2d 637 (1951); *Huttner v. MacKay*, 48 Wn.2d 378, 293 P.2d 766 (1956); *Richison v. Nunn*, 57 Wn.2d 1, 340 P.2d 793 (1959); *Gonzales v. Peterson*, 57 Wn.2d 676, 359 P.2d 307 (1961). However, expert medical testimony is not necessary to establish the breach of a physician's duty when a foreign object is left in someone's body after surgery. *See Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d 934, 936-37, 410 P.2d 785 (1966); *McCormick v. Jones*, 152 Wash. 508, 278 P. 181 (1929). The notion that a foreign object left in the body after surgery is negligent is a species of res ipsa loquitur. PROSSER AND KEETON ON THE LAW OF TORTS at 256-57 (W. Page Keeton ed., 5th ed. 1984). In this case, the majority finds that the proper use, purpose, and insertion of a Penrose drain are not within the knowledge of a layperson and that its placement is not subject to an inference of negligence. Quite inconsistently, the majority then reasons that failing to remove the drain could not have occurred but for

Rockom's and Jacoby's negligence and concludes that expert testimony is not necessary to establish that Rockom and Jacoby were negligent, i.e., the majority is applying the doctrine of res ipsa loquitur to one half of the procedure.

Under the doctrine, even when there is no doubt that negligence is "in the air," so to speak, the plaintiff must "bring it home to the defendant." *Id.* at 248. Thus, the plaintiff must show that the instrumentality causing the injury was in the exclusive control of the defendant. The jury can then infer negligence from the circumstances without expert testimony establishing a breach of duty. *Douglas v. Bussabarger*, 73 Wn.2d 476, 484, 438 P.2d 829 (1968). The majority says that Ireton did not have exclusive control because he merely placed the drain, but that whether Rockom and Jacoby had exclusive control is a question for the jury. But if Ireton did not have exclusive control neither did Rockom nor did Jacoby.

The majority's analysis does not comport with precedent. This court has held that if a plaintiff can show that all possible causes of the injury were under the control of the medical professionals, and the injury would not have occurred absent negligence, then the doctrine of res ipsa loquitur allows the jury to infer negligence from the circumstances and the burden is shifted to the medical professionals to show who was negligent. *See Pederson v. Dumouchel*, 72 Wn.2d 73, 81-82, 431 P.2d 973 (1967) (holding that plaintiff's proposed jury instruction on res ipsa loquitur should have been given; instruction stated the rule as applying when " 'an agency or instrumentality which produces injury is under the control of certain defendants or agents' "); *see also Douglas*, 73 Wn.2d at 487; *accord Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687 (1944). The majority does not apply this exception to the exclusive control requirement of res ipsa loquitur in the present case. The majority finds instead that Ireton did not have exclusive control but that the jury should decide whether Rockom and Jacoby did. The majority's reading of the res ipsa loquitur exclusive control requirement to apply differ-

ently to two doctors involved in the same procedure is troubling. Its reasoning can follow only from the division of the procedure into insertion and removal. However, since it is not known when and how the problem with the drain occurred, it does not make sense to divide the procedure, thereby arbitrarily introducing different standards of proof.

There is no claim that the plaintiff's injuries were caused by anything other than a portion of the Penrose drain being left in the body. Reasonable standards of professional medical care should not include, as a matter of law, leaving pieces of medical tubing in surgical wounds. The plaintiff here would not have been injured absent someone's negligence. Consequently, under the standard set forth in *Pederson*, 72 Wn.2d 73, and *Ybarra*, 25 Cal. 2d 486, the burden should be shifted to the medical professionals to prove who among them was negligent. To require otherwise by forcing the plaintiff to prove through expert testimony *who* harmed them in order to survive summary judgment is completely inconsistent with the doctrine of res ipsa loquitur as this court has applied it in similar circumstances. The doctrine provides for an inference of negligence when specific negligence cannot be proved by the plaintiff but is clearly observable to a layperson.

I would reverse the trial court and hold that negligence can be inferred from the fact that the tube was left in the wound and therefore summary judgment was improper. Expert testimony is not necessary on the issue of negligence.