215 P.3d 1020 (2009)
Katherine Ann RIPLEY and Daniel Joseph Ripley, husband and wife, and the marital community composed thereof, Appellants,
v.
William LANZER, M.D.; John/Jane Doe, R.N.; King County Hospital District No. 2 d/b/a Evergreen Healthcare d/b/a Evergreen Medical Center Hospital; and Unknown John and Jane Does, Respondents.
No. 61952-7-I.
Court of Appeals of Washington, Division 1.
September 14, 2009.
*1023 Philip Albert Talmadge, Emmelyn Hart-Biberfeld, Talmadge/Fitzpatrick, Tukwila, WA, George E. Kargianis, Kristen Leigh Fisher, Law Offices of George Kargianis, Seattle, WA, for Appellants.
Mary H. Spillane, William Kastner & Gibbs, Nancy C. Elliott, Dan J. Keefe, Seattle, WA, for Respondent William L. Lanzer, M.D.
Lee Miller Barns, McIntyre & Barns PLLC, Seattle, WA, for Respondent King County Hospital.
COX, J.
¶ 1 Katherine and Daniel Ripley, husband and wife, appeal the summary dismissal of their medical malpractice claims against Dr. William Lanzer, M.D., and Evergreen Medical Center and its employees (collectively "Evergreen").[1] Because the doctrine of res ipsa loquitur applies to their medical malpractice claims against Dr. Lanzer and Evergreen, the Ripleys were not required to provide expert medical testimony in response to the summary judgment motions of these defendants. There are genuine issues of material fact for trial. Summary dismissal of the medical malpractice claims was improper.
¶ 2 In contrast, the Ripleys' corporate negligence claim against Evergreen requires expert medical evidence to establish the standard *1024 of care. Because no such evidence in this record was called to the attention of the trial court, the corporate negligence claim fails.
¶ 3 Finally, there is no showing of spoliation in this record. Thus, there is no showing of abuse of discretion by the trial court in declining to impose the sanction of entry of judgment against Evergreen.
¶ 4 We reverse the summary judgment order dismissing Dr. Lanzer. We affirm the summary dismissal of the corporate negligence claim against Evergreen, but reverse the dismissal of the medical malpractice claim against that defendant. We affirm the denial of summary judgment in favor of the Ripleys against Evergreen.
¶ 5 In reviewing the summary judgment orders before us, we consider the facts in the light most favorable to the respective nonmoving parties.[2] On March 15, 2006, Dr. Lanzer, an orthopedic surgeon, performed arthroscopic medial meniscectomy surgery to repair a medial meniscus tear in Katherine Ripley's left knee. The surgery occurred at Evergreen Medical Center.[3] Evergreen supplied and maintained all of the surgical equipment used during the operation.[4] Evergreen also supplied the nursing and technical staff in the operating room.[5]
¶ 6 Prior to surgery, Teresa Bray, a surgical nurse, assembled a scalpel, which was composed of a Number 11 steel blade and a Number 7 handle.[6] Dr. Lanzer used that scalpel during the surgery on Ripley on March 15.
¶ 7 During surgery, Dr. Lanzer made two incisions to Ripley's left knee, creating two portals to provide access to the surgical site within her knee.[7] During the second incision, the scalpel blade detached from its handle and lodged in Ripley's knee joint.[8] Neither Dr. Lanzer nor Nurse Bray noticed that the blade had detached from the handle and lodged in Ripley's knee when Dr. Lanzer handed the scalpel's handle back to Bray.[9] Dr. Lanzer completed the procedure and then closed the two portals made by his initial incisions.[10]
¶ 8 After closure of the incisions, Rodney Mora, a surgical technician who joined Bray and the others in the operating room, noted that the Number 11 blade was not in its handle.[11] Following a search of the operating room, the blade could not be found.[12]
¶ 9 Dr. Lanzer ordered an x-ray of Ripley's knee, at which time the missing blade was discovered in her knee joint.[13] While Ripley remained anesthetized, Dr. Lanzer reopened the portals that had previously been sutured closed.[14] After doing so, he located the Number 11 blade within the knee. He then attempted to remove the blade by using a grasping tool.[15] Once he grasped the blade, he attempted to remove it. However, the thin edge of the blade hit soft tissue, bent, and broke into two pieces.[16]
¶ 10 Due to the length of time that Ripley had a tourniquet applied to her leg, Dr. Lanzer decided it would be best to close the incisions and terminate attempts to retrieve the broken blade on that day.[17] Before leaving the operating room, Dr. Lanzer and Nurse Bray tested the Number 7 handle with *1025 a new blade.[18] When pressure was applied, the new blade came out of the handle. Accordingly, Nurse Bray discarded the defective handle.[19] Dr. Lanzer testified that the handle should not have been used in Ripley's surgery and that it should not be used again.[20]
¶ 11 Prior to a second surgery the next day, Dr. Lanzer, ordered a CT scan "to find the blade's exact location."[21] Thereafter, with the assistance of another surgeon, Dr. Lanzer successfully removed the broken blade from the knee joint.[22]
¶ 12 Ripley has a fair amount of scarring in her knee from the blade retrieval procedures.[23] She also has persistent problems with pain in the knee, which has limited her walking and weight-bearing activities.[24]
¶ 13 The Ripleys commenced this lawsuit in June 2006 against Dr. Lanzer, alleging medical malpractice and failure to obtain informed consent. They amended their complaint in April 2007 to join Evergreen, alleging medical malpractice and corporate negligence for failure to furnish supplies and equipment free of defects. In June 2007, Dr. Lanzer moved for summary judgment on the basis that the Ripleys failed to support their claims against him with expert testimony. The Ripleys opposed the motion with expert witness testimony and argued that res ipsa loquitur applied. The trial court denied Dr. Lanzer's motion to dismiss the malpractice claim, but dismissed the informed consent claim.
¶ 14 In May 2008, Dr. Lanzer moved a second time for summary dismissal of the Ripleys' remaining claim, following their withdrawal of all disclosed experts as trial witnesses. Evergreen also moved for summary dismissal of the Ripleys' claims. In response to both of these motions, the Ripleys argued that the failure of Dr. Lanzer and Evergreen to account for the missing blade during surgery raised the inference of negligence under the doctrine of res ipsa loquitur. Thus, they were not required to provide expert medical testimony to defeat these motions. Moreover, they also argued that but for this negligence the additional surgery and damages would not have occurred.
¶ 15 The Ripleys also moved for summary judgment against Evergreen. This was based on the theory that spoliation of evidence required the remedy of dismissal.
¶ 16 The trial court granted Dr. Lanzer's motion, concluding that res ipsa loquitur did not apply and that expert medical testimony was required. The court granted Evergreen's motion, dismissing the Ripleys' malpractice, corporate negligence, and spoliation claims with prejudice, and entered judgment for Evergreen. The court denied the Ripleys' motion for summary judgment.
¶ 17 The Ripleys appeal.

RES IPSA LOQUITUR
¶ 18 The Ripleys acknowledge that expert medical testimony is generally required to establish the standard of care and causation in medical malpractice cases. But they argue that such expert testimony is not required here because the doctrine of res ipsa loquitur supplies the necessary inferences of negligence and causation for their claim against Dr. Lanzer as well as their claim against Evergreen. We agree.
¶ 19 "In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party is a defendant, this burden may be met by pointing out that there is an absence of evidence in support of the nonmoving party's case. If this initial showing is met, then the plaintiff must present evidence sufficient to raise a material question of fact regarding the essential elements of its claim. This court reviews an order of summary judgment de novo, considering *1026 the facts in the light most favorable to the nonmoving party."[25]

Medical Malpractice Claim against Dr. Lanzer
¶ 20 In Washington, actions for injuries resulting from health care are governed by chapter 7.70 RCW.[26] To prevail on their claims, plaintiffs must prove:
(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
(2) Such failure was a proximate cause of the injury complained of.[[27]]
¶ 21 Generally, expert testimony is necessary to establish the standard of care for a health care provider in a medical malpractice action.[28] Expert testimony is not necessary to establish the standard of care when medical facts are observable to a lay person and describable without medical training.[29] For example, "the doctrine of res ipsa loquitur provides an inference of negligence from the occurrence itself which establishes a prima facie case sufficient to present a question for the jury."[30]
¶ 22 "The doctrine of res ipsa loquitur recognizes that an accident may be of such a nature, or may happen under such circumstances, that the occurrence is of itself sufficient to establish prima facie the fact of negligence on the part of the defendant, without further direct proof. Thus, it casts upon the defendant the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part."[31]
¶ 23 "Negligence and causation, like other facts, may of course be proved by circumstantial evidence."[32] "A res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it."[33]
¶ 24 Res ipsa loquitur applies when:
"(1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff."[[34]]
¶ 25 "`In such cases the jury is permitted to infer negligence.'"[35] "`The doctrine permits the inference of negligence on the basis that the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person.'"[36]
¶ 26 In Washington, courts have long recognized that inadvertently leaving a foreign *1027 object in a patient's body raises the inference of negligence:[37]
[W]hen a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, that act constitutes negligence.[[38]]
¶ 27 Res ipsa loquitur is ordinarily sparingly applied, "`in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential.'"[39] Res ipsa loquitur may apply to both physicians and hospitals.[40] Whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law, which we review de novo.[41]
¶ 28 Here, Dr. Lanzer moved for summary judgment with supporting documentation to claim there was no genuine issue of material fact. His motion primarily relied on the fact that the Ripleys no longer had any expert medical witnesses for trial to support their claim of medical negligence.
¶ 29 In response, the Ripleys argued that they did not need a medical expert to support their claim because res ipsa loquitur applies to this case. Specifically, they argued that Dr. Lanzer's failure to notice that a scalpel blade had detached from its handle and remained lodged in Mrs. Ripley's knee joint when he first closed the portals to the surgery site raised the inference of negligence under the doctrine of res ipsa loquitur. Moreover, they argued that the inference of causation was also shown by the same circumstantial evidence.
¶ 30 Division Three of this court addressed the same questions in Bauer v. White.[42] There, Dr. Travis White, an orthopedic surgeon, unintentionally left a metal positioning pin in the patient's leg after surgery.[43] The pin was one of several pins used to hold a drill during surgery, but none of the pins was intended to remain in the patient.[44] The doctor did not count the pins before closing the surgical wounds.[45]
¶ 31 Following surgery and after the wound was closed, Dr. White x-rayed the patient's leg and discovered the pin inside the tibia.[46] At that point, the glue holding the prosthesis had already hardened and Dr. White decided to leave the pin in the leg.[47] The doctor finally removed the pin some seven months later when Mrs. Bauer complained of pain in her tibia.[48]
¶ 32 Following the second surgery, she continued to complain of pain in her leg. Dr. White could not find any objective symptoms other than those that normally flowed from surgery.[49] Of the seven other physicians to whom Dr. White referred Mrs. Bauer, none found any problem attributable to the pin or the surgery to remove it.[50]
¶ 33 In the suit that followed, the Bauers alleged medical negligence, seeking compensation for the second surgery, pain and suffering *1028 associated with that surgery, and the resulting scar from that surgery.[51] Both parties moved for summary judgment.[52] Dr. White supported his motion with an expert opinion by Dr. William Lanzer stating there was no standard of care for counting surgical pins.[53] The Bauers opposed the motion, but without expert medical testimony regarding the standard of care for orthopedic surgeons in Washington.[54] The question before the court was whether the Bauers were required to support their medical negligence claim with expert medical testimony on the standard of care to survive summary dismissal.[55] Based on the lack of such testimony, the trial court summarily dismissed the action.[56]
¶ 34 On appeal, the Bauer court observed that this state has long recognized that a surgeon who unintentionally leaves a foreign object in a patient's body is negligent.[57] Therefore, expert testimony on the standard of care is only necessary if the medical facts are not observable by a lay person.[58] Under the circumstances of that case, the medical facts were observable to a lay person.[59] In short:
[W]hen a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving that foreign substance in the body, there being no possibility of any good purpose resulting therefrom, the act constitutes negligence.[[60]]
¶ 35 Here, as in Bauer, Dr. Lanzer inadvertently left the blade of a scalpel in Ripley's knee when he first closed the surgical incisions. There was no good purpose in doing so, and Dr. Lanzer has not argued otherwise. The very fact that he reopened the incisions in Mrs. Ripley's leg in his unsuccessful attempts to retrieve the missing blade once he discovered that all sharps had not been accounted for shows that there was no good purpose for leaving the blade in Ripley's knee.
¶ 36 More importantly, as in Bauer, the Ripleys have established all three of the requisite elements of res ipsa loquitur, relieving them from the requirement to provide expert medical evidence to survive Dr. Lanzer's summary judgment motion. Considering the elements of res ipsa loquitur out of order, it is undisputed that the Ripleys satisfied the third element of that doctrine in this case. There is no evidence that the injury-causing accident or occurrence is due to any voluntary action or contribution on Ripley's part.[61] She was anesthetized when Dr. Lanzer failed to notice that the scalpel blade dislodged from the handle and remained in her knee joint when he closed the surgical portals for the first time.
¶ 37 Considering the first element of res ipsa loquitur, the question is whether "`the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence.'"[62] The supreme court in Zukowsky v. Brown[63] explained this element:
When are the circumstances of an occurrence sufficient to support a reasonable inference of negligence against a particular *1029 defendant? We have long recognized that the answer to this question can only be determined in the context of each case. However, some generalities can be gleaned from our cases. The most fundamental of these is that the inference of negligence must be legitimate. That is, the distinction between what is mere conjecture and what is reasonable inference from the facts and circumstances must be recognized. Thus, it is not enough that plaintiff has suffered injury or damage, for such things may result without negligence. It is necessary that the manner and circumstances of the damage or injury be of a kind that do not ordinarily happen in the absence of someone's negligence.[[64]]
¶ 38 Here, as we have already stated, it is undisputed that Dr. Lanzer unintentionally left the blade of the scalpel in the knee when it detached from the handle during the second incision. It is also undisputed that he closed the portals made by the incisions before discovering that the blade was missing. He only discovered the location of the missing blade after he ordered an x-ray that indicated the blade was still inside the knee joint.[65] Thereafter, Dr. Lanzer "opened up our portals" and found the Number 11 blade that he then unsuccessfully attempted to remove on March 15.[66] As Dr. Lanzer candidly admitted during his deposition, "[T]he blade came off the handle because the handle would not keep the blade on ... It [the handle] was either defective or worn or a combination of both or whatever."[67]
¶ 39 Dr. Lanzer does not and could not argue that a surgeon who leaves a scalpel blade in a patient without noticing the blade is there and closes the surgical portals is doing something that ordinarily happens in the absence of negligence. Accordingly, the Ripleys have satisfied the first element of the doctrine.
¶ 40 The final question is whether "the injuries are caused by an agency or instrumentality within the exclusive control of the defendant," as the second element requires.[68] Viewed in the light most favorable to the Ripleys, the evidence shows that Dr. Lanzer had actual control of the scalpel at the time its blade lodged in Ripley's knee.
¶ 41 Zukowsky again supplies the relevant standard. There, the supreme court described this element to require:
Of course, to be relevant, the evidence must support a legitimate inference that defendant was negligent. This is generally reflected in the requirement that the instrumentality which caused the damage or injury be in the actual or constructive control of defendant. To satisfy this requirement, the degree of control must be exclusive to the extent that it is a legitimate inference that defendant's control extended to the instrumentality causing injury or damage. In its proper sense, this "condition" states nothing more than the logical requirement that "the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it."[[69]]
¶ 42 Here, Dr. Lanzer stated in his deposition that he was the person using the scalpel when the blade lodged in Mrs. Ripley's knee.[70] He testified that he failed to notice that the blade was detached when he handed the handle back to Nurse Bray.[71] She also failed to notice that the blade was missing.[72]
¶ 43 Notwithstanding Dr. Lanzer's declaration following his deposition, in which he disavowed his control over the scalpel, the evidence viewed in a light most favorable to the Ripleys shows that he had control of the *1030 scalpel at the time of Ripley's injury. This was sufficient to establish the second element of the doctrine of res ipsa loquitur.
¶ 44 The other necessary inference of consequence to the application of the doctrine to this case is that of causation. As the Bauer court observed, issues of proximate cause and resulting damages are ordinarily jury questions.[73] As we have stated, the cases recognize that res ipsa loquitur provides an inference of negligence from an event that does not ordinarily occur in the absence of someone's negligence.[74] Thus, one who properly invokes the doctrine establishes a prima facie case sufficient to present a question for the jury. It then casts upon the defendant the duty to come forward with evidence to rebut the inference of negligence from plaintiff's prima facie case.[75]
¶ 45 Likewise, the doctrine also permits a prima facie case of causation to be established by the same circumstantial evidence used to create the inference of negligence.[76] Here, as in Bauer, a prima facie case of causation is established by the same circumstantial evidence that establishes a prima facie case of negligence: leaving a scalpel blade in Ripley's knee. Thus, Dr. Lanzer is also permitted to present evidence at trial to rebut the inference of causation that the Ripleys established during the summary judgment proceeding.
¶ 46 Because the Ripleys have presented evidence establishing all the requisite elements of res ipsa loquitur, they were not required to present expert medical evidence to avoid summary judgment. Application of the doctrine also gives rise to inferences of negligence and causation, raising genuine issues of material fact for a jury to decide. At trial, the court will decide after the presentation of all the evidence whether an instruction on res ipsa loquitur should be given.[77] Summary dismissal of their claim was inappropriate.
¶ 47 Dr. Lanzer necessarily concedes that the Ripleys established the third element of res ipsa loquitur, that she was not responsible for the injury-causing accident or occurrence, by failing to argue otherwise. But he insists that she failed to establish the first two elements of res ipsa loquitur. As explained, we disagree with his assertions.
¶ 48 First, we note that he does not mention Bauer in his briefing. This is a case on which the Ripleys heavily relied below and on appeal. We conclude that Dr. Lanzer's omission of any discussion or attempt to distinguish Bauer from this case in his briefing is telling.
¶ 49 Second, Dr. Lanzer argues that "Ripley does not and cannot tie the temporary closing of the portal incisions during the March 15 arthroscopic surgery to the injuries for which she seeks damages."[78] But as the Bauer court noted, "The question is whether the foreign object was inadvertently left [in the patient], not for how long."[79] Ripley is entitled to any damages proximately caused by negligence in failing to remove the foreign object, including scarring, pain, and suffering.
¶ 50 Third, Dr. Lanzer attempts to recast Mrs. Ripley's injury-producing occurrence to the "fact that the scalpel blade came off the handle and lodged in Mrs. Ripley's knee and then broke into fragments when Dr. Lanzer *1031 attempted to retrieve it."[80] But as the Ripleys have argued, the inference of negligence arises from "inadvertently leaving a foreign object [the blade] in a patient's body [Ripley's knee] after closing [the] surgical incision[s]."[81] We do not read the attempts by Dr. Lanzer to retrieve the imbedded blade after reopening the portals in Mrs. Ripley's leg to be the underlying basis for the res ipsa loquitur claim. Rather, the focus is on Dr. Lanzer's failure to notice the missing blade when he handed the Number 7 handle back to Nurse Bray and then closed the incisions before a sharps count was taken following the scheduled procedure. The attempt here to blur the distinction between the completion of the scheduled surgical procedure and the subsequent attempt to retrieve the missing blade is not persuasive.
¶ 51 Fourth, Dr. Lanzer also claims that he did not have exclusive control over the scalpel based on the fact that he "did not own, keep, maintain, service or test" the equipment. But these are not the tests. Rather, "actual or constructive control" is. This record shows that Dr. Lanzer had the scalpel in his hand when the blade came loose and lodged in the patient's knee. Viewed in the light most favorable to the Ripleys, this constitutes actual control.
¶ 52 Fifth, Dr. Lanzer also claims there is no showing of proximate cause by the Ripleys. We disagree on the bases we have already discussed in this opinion. On this record, the inferences of negligence and causation that arise from unintentionally leaving a foreign object in Mrs. Ripley's knee are sufficient to create genuine issues of material fact for trial.[82]
¶ 53 As McCormick v. Jones[83] and Bauer make clear, the Ripleys are entitled to all damages that were proximately caused from such negligence in the event the jury determines that Dr. Lanzer's failure to notice the missing blade before closing the initial incisions was negligent.[84] Although Dr. Lanzer claims that the Ripleys cannot prove that the reopening and reclosing of the portals on March 15 caused scarring or pain apart from what otherwise occurred on March 16, that is for a jury to decide, not a judge.[85]
¶ 54 Finally, Dr. Lanzer faults the Ripleys for what they do not argue.[86] For example, he faults them for not arguing that the blade fell off because of negligence on his part. He also faults them for not arguing that the blade fell in a place within the knee joint where he could have retrieved it had he noticed that it was missing before he closed the portals. And he also faults them for not arguing that the blade fractured because of his negligence in retrieving it.
¶ 55 The simple answer to these arguments is that res ipsa loquitur does not require the Ripleys to make any of these arguments. Rather, as we have discussed, it requires that they establish the three elements of the doctrine. Viewing the evidence in the light most favorable to the Ripleys, inferences of negligence and causation are present in this case. Dr. Lanzer is free to present evidence to rebut these inferences at trial.
¶ 56 As this court said in Tinder v. Nordstrom,[87] "`only where the facts and the demands of justice make its application essential,'" do we apply res ipsa loquitur.[88] Here, Dr. Lanzer left the scalpel blade in his patient's knee when he closed the incisions *1032 during the first surgery. The facts as to what took place that resulted in this failure are peculiarly within the knowledge of Dr. Lanzer and Evergreen. Only after searching the operating room and taking an x-ray of Ripley's leg did he locate the missing blade. These facts and the demands of justice require that a jury determine whether the inferences of negligence and causation that arise from these facts require the imposition of liability on Dr. Lanzer. No expert medical testimony was required to raise the inferences in this case.

Medical Malpractice Claim against Evergreen
¶ 57 The Ripleys also argue that the trial court improperly dismissed their medical malpractice claim against Evergreen. We agree.
¶ 58 Evergreen does not contest that the Ripleys have established the third element of res ipsa loquitur. Mrs. Ripley had nothing to do with causing the injury she suffered.
¶ 59 As for the first element, the Ripleys must show that "the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence."[89] They produced evidence that the operating room nurses share responsibility with the surgeon to determine the location of the surgical instruments before and after they are used.[90] Nurse Bray testified at her deposition that she did not notice that the scalpel was missing its blade when Dr. Lanzer handed it back to her after making the incisions in Mrs. Ripley's leg.[91] And Dr. Lanzer testified that he saw no reason why Nurse Bray could not have seen that the blade of the scalpel was missing when he handed it back to her.[92] In fact, it was not until a surgical technician, Rodney Mora, discovered that the blade was missing that Dr. Lanzer and others in the operating room searched for the missing blade.[93] Dr. Lanzer ultimately determined by the use of an x-ray of the patient's knee that he unintentionally left the missing blade in her knee when he closed the portals to the surgical site the first time. Evergreen does not and could not argue that a surgical nurse who fails to notice that a scalpel handed back to her by the surgeon without its blade is something that the nurse would ordinarily fail to do in the absence of negligence. The Ripleys have established this element.
¶ 60 As for the second element, the question is whether "the injuries are caused by an agency or instrumentality within the exclusive control of the defendant."[94] Viewed in the light most favorable to the Ripleys, the evidence shows that Evergreen, had responsibility for the proper functioning of the scalpel and blade at the time that it caused Ripley's injury. Moreover, as Dr. Lanzer admitted at his deposition, when he removed the scalpel handle from Ripley's knee, there was no "reason why the nurse [Bray] couldn't have visualized the fact that the blade was missing."[95]
¶ 61 In Hogland v. Klein,[96] our supreme court concluded that the control element of the res ipsa loquitur doctrine does not necessarily require "actual physical control" but refers instead to the "right of control at the time of the accident."[97] In explaining this type of control, the court stated:
Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury provide a *1033 sufficient basis for application of the doctrine.[[98]]
¶ 62 Here, the Ripleys produced evidence that the operating room nurses share responsibility with the surgeon to determine the condition and location of the surgical instruments before and after they are used.[99] Moreover, Nurse Bray stated in her deposition that it was her responsibility as the scrub nurse to assemble the equipment and instruments for the case and to assist the surgeon during surgery.[100] Nurse Bray also stated that when Dr. Lanzer handed the instrument back to her after making the incisions she did not examine it or observe the blade was missing.[101] This evidence shows that Evergreen had "responsibility for the proper and efficient functioning of the instrumentality which caused the injury" and were in a position to know that the blade had detached from the scalpel handle at relevant times after the incisions. In light of Hogland, Evergreen's argument that neither Dr. Lanzer nor its nurses had exclusive control of the scalpel and blade is unpersuasive.
¶ 63 Evergreen argues that res ipsa loquitur does not apply because it is beyond the expertise of a lay person to speculate whether it was negligent for the missing blade to initially go unnoticed. This argument mischaracterizes what a jury is asked to do in a proper res ipsa loquitur case. The cases make clear that if a plaintiff establishes the three elements of res ipsa loquitur, an inference of negligence on the part of the defendant arises.[102] The defendant, of course, is entitled to introduce its own evidence to refute the inference. In any event, the jury is not speculating when it is performing its traditional function of deciding whether the inference of negligence supports imposition of liability on Evergreen. The same type of analysis applies to the inference of causation that also arises from the same circumstantial evidence as that raising the inference of negligence.[103]
¶ 64 Evergreen also argues that it is reasonable, especially in an operating environment that is dark during the procedure, as occurred here, that something will be left behind in the patient during an operation. To the extent that this argument implies that a hospital could never be held liable under the theory of res ipsa loquitur for failing to notice that its instruments have been left inside a patient, we simply reject it as obviously incorrect.
¶ 65 Evergreen argues that the purpose of a "sharps count" at the end of the procedure is to locate any items that may have been left behind, which occurred here. When the staff alerted the doctor about the missing blade, he attempted to remove it and stopped only because, in his medical judgment, it was advisable to do so. But Evergreen noticed the missing sharp only after the surgeon had closed the incisions. This does not avoid the harm to the patient for failing to notice the missing sharp before the incisions were closed.
¶ 66 Evergreen cites two federal cases to support its argument. Neither is persuasive for purposes of this case.
¶ 67 In Callahan v. Cho,[104] a small fragment of a suturing needle lodged in the plaintiff's muscle tissue during a hip replacement surgery.[105] The doctor searched for the fragment but was unable to locate it without destroying significant muscle.[106] Based on his experience, the doctor anticipated that the fragment would not cause the plaintiff any harm and decided not to remove *1034 it.[107] The court dismissed the plaintiff's claim for malpractice on summary judgment because the plaintiff failed to present the required medical expert certificate required by West Virginia law and because the doctrine of res ipsa loquitur did not apply.[108]
¶ 68 Significantly, whatever the law is in West Virginia we are not persuaded that it applies here. In discussing the application of res ipsa loquitur, the court noted that the doctrine could only be invoked in cases where the defendant's negligence is the only inference that can reasonably be drawn from the circumstances.[109] But res ipsa loquitur applies more broadly under Washington law.[110] Moreover, unlike in our case, the Callahan court noted that the doctor had not unwittingly or inadvertently done anything.[111] Here, the contrary facts were established.
¶ 69 In Wagner v. Deborah Heart & Lung Center,[112] the court dismissed plaintiff's malpractice claim because he failed to produce expert testimony supporting his negligence claim, and res ipsa loquitur did not apply. There, the surgeon intentionally left the tip of an awl imbedded in the sternum after surgery because, in his medical judgment, the risks were too high to remove it at that time.[113] Two years later, the awl tip was removed when infection was suspected.[114] The court rejected the plaintiff's argument that res ipsa loquitur applied, because the doctor had known about the fragment and intentionally left the tip in the sternum, distinguishing it from cases where a foreign object had inadvertently been left and discovered after closing the incision.[115]
¶ 70 In contrast, Evergreen's surgical team did not inspect the scalpel or notice the blade had become detached until the sharps count after the wound was closed. Thus, Evergreen inadvertently failed to bring to the attention of the surgeon that the blade was missing before the surgeon closed the incisions.
¶ 71 Evergreen next argues that the "foreign body res ipsa cases"[116] are distinguishable from our case because they represent cases where the "count" did not work as it was supposed to. We disagree.
¶ 72 Neither Bauer nor McCormick involved count procedures. In fact, evidence presented in Bauer suggested that counting positioning pins was not standard procedure for the surgical team.[117] Leaving the foreign object in the patient's body and then closing was enough to raise the inference of negligence in both cases. Significantly, nothing in these cases suggests that where a sharps count reveals that a foreign object is retained in the patient's body, negligence is somehow forgiven.

CORPORATE NEGLIGENCE
¶ 73 The Ripleys argue the trial court improperly dismissed their corporate negligence claim against Evergreen. We disagree.
¶ 74 The essential elements of negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach; (3) resulting injury; and (4) proximate cause between the claimed breach and resulting injury.[118]
*1035 ¶ 75 Washington courts recognize the doctrine of corporate negligence, which "imposes on [a] hospital a nondelegable duty owed directly to the patient, regardless of the details of the doctor-hospital relationship."[119] Under this doctrine, a hospital owes its patients the duty to furnish to the patient supplies and equipment free of defects, among others.[120] The standard of care to which the hospital will be held is that of an average, competent health care facility acting in the same or similar circumstances.[121] This standard is generally defined by the Joint Commission on Accreditation of Hospitals (JCAH) standards and the hospital's bylaws.[122] In general, expert testimony is required when an essential element in the case is best established by opinion that is beyond the expertise of a lay person.[123]
¶ 76 Here, the Ripleys alleged in their complaint that Evergreen had violated its duty to furnish supplies and equipment free of defects under a corporate negligence theory. As evidence of breach, the Ripleys produced deposition statements by Dr. Lanzer and Nurse Bray that the handle of the scalpel used in surgery was defective. But the Ripleys failed to produce any expert testimony for consideration by the trial court that the scalpel failed to meet JCAH standards or other hospital standards adopted by Evergreen or that Evergreen's alleged lack of equipment policies and procedures somehow breached this duty.[124] The Ripleys argued at oral argument before this court that Dr. Lanzer's testimony that the handle was defective is expert testimony supporting their claim. But the record fails to show they pointed this out to the court below. Moreover, other than the statement in the opening brief, there is no argument or citation to the record on this point. Accordingly, we do not consider this argument further.[125]
¶ 77 The Ripleys argue that they presented evidence Evergreen failed to furnish surgical supplies and equipment free of defects, but they cite to no authority to support their position that no expert testimony is required here. In addition, the Ripleys fail to explain how the circumstances here entitle them to the res ipsa loquitur presumption that Evergreen failed to provide supplies and equipment free of defects. Notably, in support of the causation element of this claim, the Ripleys produced only a report from Mrs. Ripley's treating physician that indicates she has had debilitating scaring, pain, and trouble walking since the blade retrieval procedure. Significantly, nothing in the report states the doctor's opinion that the procedure caused Mrs. Ripley's problems.
¶ 78 The Ripleys also argue for the first time on appeal that Evergreen failed to supply competent staff. We do not consider this argument for the reason we previously stated.

SPOLIATION
¶ 79 The Ripleys argue that the trial court erred in dismissing their claim because Evergreen allegedly intentionally destroyed key evidence when Nurse Bray threw away the defective scalpel handle after the surgery. They contend the scalpel handle was crucial evidence and its destruction severely prejudiced their case. They argue spoliation *1036 entitles them to judgment in their favor. They are mistaken.
¶ 80 Spoliation is defined as the intentional destruction of evidence.[126] In deciding whether to apply a sanction, courts consider the potential importance or relevance of the missing evidence and the culpability or fault of the adverse party.[127] We review a trial court's decision regarding sanctions for discovery violations for an abuse of discretion.[128]
¶ 81 First, it is unclear that the scalpel handle used in Mrs. Ripley's surgery is important to the litigation. Significantly, the record contains testimony from Dr. Lanzer and others to the effect that the handle would not properly hold a blade and was defective. In view of this admission, it is unclear to this court why the discarded handle is important to this litigation.
¶ 82 Second, at the time that the nurse discarded the broken scalpel handle, the Ripleys' lawsuit had not commenced and no request had been made to retain the handle. On these facts, we see no bad faith or other reason to show that this act was intended to destroy important evidence.
¶ 83 The Ripleys argue the trial court should have sanctioned Evergreen for spoliation by granting judgment in their favor. But the Ripleys fail to show how the trial court's decision to deny summary judgment in their favorthe ultimate sanctionwas an abuse of discretion. Moreover, it is unclear how the Ripleys are entitled to this remedy where their claim was properly dismissed for lack of evidence to support it.

Ripleys' Motion for Partial Summary Judgment
¶ 84 The Ripleys argue they are entitled to summary judgment against Evergreen because res ipsa loquitur applies. We disagree.
¶ 85 In their motion below, the Ripleys argued they were entitled to partial summary judgment on the issue of liability for both claims against Evergreen, permitting a trial on damages.
¶ 86 The trial court did not err in denying their motion. Assuming the Ripleys are entitled to the res ipsa loquitur presumption, genuine issues of material fact remain regarding Evergreen's liability for medical malpractice. Furthermore, the Ripleys' corporate negligence claim was properly dismissed for a lack of evidence to support the claim.
¶ 87 The Ripleys assign error to the final judgment in favor of Evergreen entered pursuant to CR 54(b), but make no separate argument focused on this court rule. Accordingly, we do not address that assignment.
¶ 88 We reverse the summary judgment of dismissal in favor of Dr. Lanzer and the summary dismissal of the medical malpractice claim against Evergreen. We affirm the summary dismissal of the corporate negligence claim against Evergreen and the denial of summary judgment in favor of the Ripleys against Evergreen for spoliation. We also remand for further proceedings.
WE CONCUR: SCHINDLER, C.J., and ELLINGTON, J.
NOTES
[1] King County Hospital District No. 2 does business as Evergreen Healthcare, which does business as Evergreen Medical Center Hospital. Here, we use the word Evergreen to include the hospital as well as its nursing staff.
[2] Tinder v. Nordstrom, Inc., 84 Wash.App. 787, 791, 929 P.2d 1209 (1997).
[3] Clerk's Papers at 638.
[4] Clerk's Papers at 729-30.
[5] See Clerk's Papers at 752.
[6] Clerk's Papers at 247-48, 933.
[7] Clerk's Papers at 731-32.
[8] Clerk's Papers at 732.
[9] Clerk's Papers at 638, 732.
[10] Clerk's Papers at 638-39, 732.
[11] Clerk's Papers at 729.
[12] Clerk's Papers at 732.
[13] Clerk's Papers at 638, 732.
[14] Clerk's Papers at 638-39, 732.
[15] Clerk's Papers at 227.
[16] Id.
[17] Clerk's Papers at 733-34.
[18] Clerk's Papers at 735.
[19] Clerk's Papers at 253.
[20] Clerk's Papers at 380, 735.
[21] Clerk's Papers at 703.
[22] Clerk's Papers at 805-06.
[23] Clerk's Papers at 304.
[24] Id.
[25] Tinder, 84 Wash.App. at 790-91, 929 P.2d 1209 (citations omitted).
[26] Miller v. Jacoby, 145 Wash.2d 65, 72, 33 P.3d 68 (2001).
[27] RCW 7.70.040.
[28] Miller, 145 Wash.2d at 72, 33 P.3d 68 (citing Harris v. Groth, 99 Wash.2d 438, 449, 663 P.2d 113 (1983)).
[29] Id. at 72-73, 33 P.3d 68.
[30] Metro. Mortgage & Sec. Co., Inc. v. Washington Water Power, 37 Wash.App. 241, 243, 679 P.2d 943, 944 (1984)
[31] Id. (citing Morner v. Union Pac. R.R., 31 Wash.2d 282, 291, 196 P.2d 744 (1948)).
[32] Id. at 243, 679 P.2d 943.
[33] Id. (citing Restatement (Second) Torts § 328 D, Comment b (1965)).
[34] Pacheco v. Ames, 149 Wash.2d 431, 436, 69 P.3d 324 (2003) (quoting Zukowsky v. Brown, 79 Wash.2d 586, 593, 488 P.2d 269 (1971) (internal quotations omitted)).
[35] Id.
[36] Id.
[37] Miller, 145 Wash.2d at 72, 74, 33 P.3d 68 (holding that expert testimony not needed to assert negligence against the doctor who inadvertently left a portion of a surgical drain in the patient's body after removal); see also Conrad v. Lakewood General Hospital, 67 Wash.2d 934, 936-37, 410 P.2d 785 (1966) (holding that doctors were negligent by unintentionally leaving a surgical instrument in the patient's body after surgery); Bauer v. White, 95 Wash.App. 663, 976 P.2d 664 (1999) (holding that doctor breached duty of care by leaving foreign object in surgical patient).
[38] McCormick v. Jones, 152 Wash. 508, 511, 278 P. 181 (1929).
[39] Tinder, 84 Wash.App. at 792, 929 P.2d 1209 (quoting Morner, 31 Wash.2d at 293, 196 P.2d 744).
[40] Miller, 145 Wash.2d at 72, 33 P.3d 68.
[41] Pacheco, 149 Wash.2d at 436, 69 P.3d 324.
[42] 95 Wash.App. 663, 976 P.2d 664, review denied, 139 Wash.2d 1004, 989 P.2d 1140 (1999).
[43] Id. at 664, 976 P.2d 664.
[44] Id. at 665, 976 P.2d 664.
[45] Id.
[46] Id.
[47] Id.
[48] Id.
[49] Id.
[50] Id.
[51] Id. at 666, 976 P.2d 664.
[52] Id.
[53] Id.
[54] Id.
[55] Id.
[56] Id.
[57] Id. at 667, 976 P.2d 664.
[58] Id.
[59] Id.
[60] Id. at 668, 976 P.2d 664 (quoting McCormick, 152 Wash. at 510-11, 278 P. 181).
[61] Miller, 145 Wash.2d at 68, 74-75, 33 P.3d 68 (concluding that a patient undergoing surgery for kidney stones and to repair a malformed right kidney did not contribute to the injury causing event during surgery); Zukowsky, 79 Wash.2d at 596, 488 P.2d 269 (concluding that there was nothing so unreasonable or abnormal in the plaintiff's use of a helm seat of a boat to support a claim of her negligence or prevent the inference of defendant's negligence arising in the first instance).
[62] See Pacheco, 149 Wash.2d at 436, 69 P.3d 324 (quoting Zukowsky, 79 Wash.2d at 593, 488 P.2d 269).
[63] 79 Wash.2d 586, 488 P.2d 269 (1971).
[64] Id. at 594-95, 488 P.2d 269 (emphasis added).
[65] Clerk's Papers at 948.
[66] Clerk's Papers at 799-800.
[67] Clerk's Papers at 229.
[68] See Pacheco, 149 Wash.2d at 436, 69 P.3d 324 (quoting Zukowsky, 79 Wash.2d at 593, 488 P.2d 269).
[69] Zukowsky, 79 Wash.2d at 595, 488 P.2d 269 (quoting Prosser, Res Ipsa Loquitur in California, 37 Cal. L.Rev. 183, 201 (1940)) (emphasis added).
[70] Clerk's Papers at 732.
[71] Clerk's Papers at 731-32.
[72] Clerk's Papers at 732.
[73] Bauer, 95 Wash.App. at 669, 976 P.2d 664.
[74] Metro. Mortgage, 37 Wash.App. at 243-44, 679 P.2d 943.
[75] Id. at 243, 679 P.2d 943.
[76] Id.
[77] Compare Pacheco, 149 Wash.2d at 444, 69 P.3d 324 (a patient is entitled to a res ipsa loquitur instruction where a defendant dentist drilled on the wrong side of that patient's mouth and the dentist's evidence suggested but did not completely explain how the event causing incident may have occurred) and Covey v. Western Tank Lines, 36 Wash.2d 381, 391, 218 P.2d 322 (1950) (if evidence is completely explanatory of how the accident occurred such that no inference is left that the accident may have happened in another way, the doctrine of res ipsa loquitur does not operate).
[78] Brief of Respondent William L. Lanzer, M.D. at 15.
[79] Bauer, 95 Wash.App. at 669, 976 P.2d 664 (emphasis added).
[80] Brief of Respondent William L. Lanzer, M.D. at 20.
[81] Brief of Appellants Katherine and Daniel Ripley at 21.
[82] See Metro. Mortgage, 37 Wash.App. at 243, 679 P.2d 943 (doctrine of res ipsa loquitur provides inference of negligence that establishes a prima facie case sufficient to present a question for the jury).
[83] 152 Wash. 508, 278 P. 181 (1929).
[84] See Bauer, 95 Wash.App. at 669, 976 P.2d 664 (issues of proximate cause and resulting damages are jury questions).
[85] See id.
[86] Brief of Respondent William L. Lanzer, M.D. at 15-16.
[87] 84 Wash.App. 787, 929 P.2d 1209 (1997).
[88] Id. at 792, 929 P.2d 1209 (quoting Morner, 31 Wash.2d at 293, 196 P.2d 744).
[89] See Pacheco, 149 Wash.2d at 436, 69 P.3d 324 (quoting Zukowsky, 79 Wash.2d at 593, 488 P.2d 269).
[90] Clerk's Papers at 961.
[91] Clerk's Papers at 964.
[92] Clerk's Papers at 948.
[93] Id.
[94] See Pacheco, 149 Wash.2d at 436, 69 P.3d 324 (quoting Zukowsky, 79 Wash.2d at 593, 488 P.2d 269).
[95] Clerk's Papers at 732.
[96] 49 Wash.2d 216, 298 P.2d 1099 (1956).
[97] Id. at 219, 298 P.2d 1099.
[98] Id. at 219, 298 P.2d 1099.
[99] Clerk's Papers at 780, 1156.
[100] Clerk's Papers at 961.
[101] Id. at 964.
[102] See Metro. Mortgage, 37 Wash.App. at 243, 679 P.2d 943 (res ipsa loquitur doctrine recognizes that occurrence is of itself sufficient to establish prima facie the fact of negligence on the part of defendant).
[103] See id. ("A res ipsa loquitur case is ... one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and defendant's relation to it.").
[104] 437 F.Supp.2d 557 (E.D.Va.2006).
[105] Id. at 560.
[106] Id.
[107] Id.
[108] Id. at 564.
[109] Id. at 563.
[110] See Pacheco, 149 Wash.2d at 439-40, 69 P.3d 324 (plaintiff may be entitled to rely on res ipsa loquitur doctrine even if the defendant's testimony, if believed by the fact finder, would explain how event causing injury occurred).
[111] See Callahan, 437 F.Supp.2d at 563.
[112] 247 N.J.Super. 72, 588 A.2d 860 (1991).
[113] Id. at 863.
[114] Id. at 861-62.
[115] Id. at 863.
[116] McCormick, 152 Wash. 508, 278 P. 181 (no indication when lost sponge detected, but removed up to six weeks after surgery); Conrad, 67 Wash.2d 934, 410 P.2d 785 (lost surgical instrument not discovered and removed until approximately six weeks after surgery); Wharton v. Warner, 75 Wash. 470, 135 P. 235 (1913) (12-inch spring undetected in patient for 15 days).
[117] Bauer, 95 Wash.App. at 666, 976 P.2d 664.
[118] Pedroza v. Bryant, 101 Wash.2d 226, 228, 677 P.2d 166 (1984).
[119] Id. at 229, 233, 677 P.2d 166.
[120] Douglas v. Freeman, 117 Wash.2d 242, 248, 814 P.2d 1160 (1991).
[121] Pedroza, 101 Wash.2d at 233, 677 P.2d 166.
[122] Id. at 233-34, 677 P.2d 166.
[123] Harris, 99 Wash.2d at 449, 663 P.2d 113 (citing 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 300 (1982)).
[124] Cf. Schoening v. Grays Harbor Comm. Hosp., 40 Wash.App. 331, 335-36, 698 P.2d 593 (1985) (concluding that where plaintiff's expert opined hospital violated and failed to maintain required minimum medical standards of care, a question of fact remained and summary dismissal of corporate negligence claim was improper).
[125] See Wagner Dev. Inc. v. Fidelity and Deposit Co. of Maryland, 95 Wash.App. 896, 898 n. 1, 977 P.2d 639 (1999) (limiting appellate review of a summary judgment order to only those facts in the record that were considered by the trial court); see also State v. Bugai, 30 Wash.App. 156, 158, 632 P.2d 917 (1981) ("[C]ases on appeal are decided only from the record, and `[i]f the evidence is not in the record it will not be considered.'" (quoting State v. Wilson, 75 Wash.2d 329, 332, 450 P.2d 971 (1969))).
[126] Henderson v. Tyrrell, 80 Wash.App. 592, 605, 910 P.2d 522 (1996).
[127] Id. at 607, 910 P.2d 522.
[128] Id. at 604, 910 P.2d 522.